IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



TERRY RICHARD SANFORD,
as Administrator of the
Estate of John Charles Sanford,
deceased, officially, individually,
and as beneficiary, et al.,

    Plaintiffs,

v.                      Civil Action No. 3:08cv835

THE COMMONWEALTH OF VIRGINIA,
et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANTS DEBORAH BOLLING AND JACKIE WRIGHT'S MOTION TO DISMISS (Docket No. 70). For the reasons set forth below, DEFENDANTS DEBORAH BOLLING AND JACKIE WRIGHT'S MOTION TO DISMISS (Docket No. 70) will be granted in part and denied in part.

### BACKGROUND

The lead Plaintiff, Terry Sanford, is the administrator of the estate of his natural brother, John Sanford. (Am. Compl. at ¶ 2.) The other Plaintiffs are various close family members of Sanfords, including his mother and two of his brothers. (Id. at ¶¶ 2-5.) John Sanford, who was physically and mentally disabled, died while hospitalized in the Medical College of

Virginia ("MCV") following surgery. (Id. at ¶ 1.) Approximately four days after major surgery, Sanford became delirious and difficult to manage. (Id. at ¶ 43.) Hospital staff summoned assistance from the Virginia Commonwealth University ("VCU") police department which dispatched four officers who physically restrained Sanford. It is alleged that the officers placed Sanford in handcuffs, and left him prone on the floor for approximately half an hour. (Id. at ¶ 44.) After that time, Sanford died. (Id. at ¶ 46.) Sanford's death allegedly was caused by a combination of toxically-high doses of sedative, rough handling by police officers and hospital security guards in response to the disturbance caused by Sanford, and inattention by hospital staff after Sanford was restrained by police officers. (Id. at ¶¶ 49-50.) Hospital personnel also, allegedly, intubated Sanford notwithstanding an outstanding Do Not Resuscitate order. (Id. at ¶ 48.) Hospital personnel then, allegedly, prevented Sanford's family from examining the body and lied about the circumstances surrounding his death. (Id. at ¶¶ 281, 287-88.)

The Plaintiffs have asserted a large number of claims against a significant number of defendants based on these events. The motion at hand concerns only two of these defendants: Deborah R. Bolling and Jackie Wright, and one of the Plaintiffs' claims.

2

Count 21 of the Amended Complaint alleges a state-law tort claim of intentional or negligent infliction of emotional distress against Deborah Bolling and Jackie Wright, the two hospital administrators who allegedly lied to Sanford's family about the conditions of his death and prevented them from examining his body. The Plaintiffs for purposes of Count 21 are John Sanford and several other members of Sanford's immediate family.

The Defendants have moved to dismiss Count 21 on the basis that it does not alleged sufficient facts to meet the requirements of Fed. R. Civ. P. 8 and 12(b)(6). The Plaintiffs have agreed that Count 21 does not plead sufficient facts to state a claim for negligent infliction of emotional distress, but continue to press their claim of intentional infliction of emotional distress.

## DISCUSSION

### A. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. The Court must take all factual allegations made in the complaint as true, and draw all reasonable and favorable inferences from those facts. Eastern Shore Markets, Inc v. JD Associates Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). In order to survive a Rule 12(b)(6) motion, a pleading need not contain "'detailed factual

3

allegations' but [Rule 8] demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id.

The Fourth Circuit, applying the Twombly standard, has emphasized that the complaint must "allege' enough facts to state a claim for relief that is *plausible* on its face.'" Giarratano, 521 F.3d at 302 (emphasis in original) (quoting Twombly, 127 S.Ct. at 1974). In deciding the motion, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id. (quoting Eastern Shore Markets, 213 F.3d at 180).

### B. Count 21

#### 1. Intentional Infliction of Emotional Distress

The Supreme Court of Virginia has held that:

> In order to recover on a claim of intentional infliction of emotional distress, a plaintiff must satisfy four elements of proof. The plaintiff must show that 1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe.

4

Supervalu, Inc. v. Johnson, 276 Va. 356, 666 S.E.2d 335, 343 (2008). Claims for intentional infliction of emotional distress are generally disfavored under Virginia law. See id.[1] The Defendants argue that the Plaintiffs have not sufficiently pled the first three of the four required elements. (Def. Mem. at 4-5.)

**2. Intent**

The first element of an intentional infliction of emotional distress claim under Virginia law is that the defendant's conduct was intended to cause emotional distress to the plaintiff or is reckless with respect to the danger of that distress. See Supervalu, 666 S.E.2d at 343. For purposes of this tort, acting intentionally means engaging in conduct for the specific purpose of causing emotional distress to the victim. See Almy v. Grisham, 273 Va. 68, 639 S.E.2d 182, 187 (2007). An individual inflicts emotional distress recklessly if he takes an action without regard to the risk of causing emotional distress to another when he knew or could have been expected to know of the risk. See Delk v. Columbia/HCA Healthcare Corp., 259 Va. 125, 523 S.E.2d 826, 833 (2000).

---

[1] It should be noted at this point that, while Virginia applies different pleading standards to intentional infliction of emotional distress claims, the Fourth Circuit has stated that normal federal pleading rules apply to these actions when being heard in federal court. See Hatfill v. New York Times Co., 416 F.3d 320, 337 (4th Cir. 2005).

5

The Plaintiffs make a conclusory allegation that the conduct of Wright and Bolling in misinforming the Plaintiffs about Sanford's death and preventing them from viewing his body was "intentional and/or reckless and/or negligent." (Am. Compl. at ¶ 276.) This allegation, standing alone, would be insufficient to sustain the Plaintiffs' claim, as Wright and Bolling correctly argue. (Def. Mem. at 5.) Furthermore, the Plaintiffs' argument that Wright and Bolling's conduct intentionally caused emotional distress because it was intentionally deceitful is unavailing because the alleged object of the deceit was not to cause emotional distress to the Plaintiffs. (Pl. Mem. at 5); <u>Almy</u>, 639 S.E.2d at 187. No other factual allegations in the Amended Complaint support the proposition that Wright and Bolling acted intentionally.

The more specific factual allegations made by the Plaintiffs, however, are sufficient to support the argument that Wright and Bolling acted recklessly. It is alleged that Wright and Bolling knew, or should have known, that spreading misinformation about the death of a loved one and preventing family members from seeing the loved one's remains would cause emotional disturbance to the Plaintiffs. Wright and Bolling, the Amended Complaint alleges, undertook their concealment of Sanford's death and subsequently delayed the ability of the

6

Plaintiffs to view his remains notwithstanding their alleged actual or constructive knowledge. (Am. Compl. at ¶¶ 276-90.)

This is quite similar to the claim that the Supreme Court of Virginia approved in Delk, where the court found that caregivers who lied to their patients about the patients' HIV status acted with sufficient recklessness to support a claim of intentional infliction of emotional distress. See 523 S.E.2d at 833. Recklessness was established because the possible emotional impact of a determination of HIV status was "common knowledge." Id. Knowledge of the emotional impact of the death of a loved one and disposition of his remains is certainly similarly common, as the Defendants themselves admit. (Def. Mem. at 5.) Therefore, Count 21 does not fail on this element.

### 3. Outrageousness

The second element of the tort of intentional infliction in Virginia is that the alleged conduct must be "outrageous or intolerable." Supervalu, 666 S.E.2d at 343. "[T]he term 'outrageous' does not objectively describe particular acts but instead represents an evaluation of behavior." Almy, 639 S.E.2d at 187. To support a claim of intentional infliction of emotional distress, the behavior in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

7

Id. (internal quotations omitted). The conduct in question must rise above the level of being merely "insensitive and demeaning". See Harris v. Kreutzer, 271 Va. 188, 624 S.E.2d 24, 34 (2006).

Here too, the decision of the Supreme Court of Virginia in Delk provides significant instruction. See 523 S.E.2d at 833. In that case, the Supreme Court upheld a plaintiff's claim for intentional infliction of emotional distress based on the defendants' lies to the plaintiff concerning her HIV status against a demurrer. See id. The similarity to this case is clear: like the defendants in Delk, Wright and Bolling are alleged to have affirmatively misrepresented the conditions of a loved one's passing and to have prevented the family members from gaining access to the remains and further information about the death. (Am. Compl. at ¶¶ 276-90.) Deceitful conduct that caused emotional distress also has been upheld as outrageous in other contexts. See Almy, 639 S.E.2d at 187; see also Perk v. Worden, 475 F.Supp.2d 565, 570 (E.D.Va. 2007) (attorney's lies to opposing party sufficient to meet the outrageousness requirement). This was not a case of mere verbal abuse or insensitive conduct, as in Harris; instead, Wright and Bolling allegedly engaged in planned and comprehensive deceitful conduct to protect their employer, heedless of the known risk of emotional trauma to the family members. Therefore, the

8

Plaintiffs have sufficiently alleged the element of outrageousness.

### 4. Causation

The third element of the tort of intentional infliction of emotional distress is causation: the outrageous conduct at issue must have had a causal relationship with the resulting emotional distress. See Supervalu, 666 S.E.2d at 343. In essence, the plaintiff must plead that the defendants' conduct was the actual cause of his distress. See Almy, 639 S.E.2d at 187-88.

The Defendants argue that it was the facts surrounding the circumstances of Sanford's death that caused the Plaintiffs' emotional distress, not the deceptive actions of Wright and Bolling. (Def. Mem. at 8; Def. Rep. at 7.) While it is certainly true, as the Defendants argue, that the circumstances of Sanford's death were themselves emotionally distressing to the Plaintiffs, the Amended Complaint quite clearly alleges that the deceptive actions of Wright and Bolling increased that distress significantly. (Am. Compl. at ¶¶ 276, 291.) The plaintiff in Delk relied on a similar theory, alleging that the deceptive actions of the defendant caused her emotional distress, even though the distress did not manifest itself until the deception had been revealed. See 523 S.E.2d at 833. It, therefore, is plausible that the actions of Wright and Bolling

9

caused the emotional distress of the Plaintiffs, and the Plaintiffs' claim does not fail on that element.

### 5. Severity

The final element of the tort of intentional infliction of emotional distress is that the emotional distress allegedly caused by the outrageous conduct must have been severe. See Supervalu, 666 S.E.2d at 343. Emotional distress will support a claim for intentional infliction of emotional distress only when "the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." Harris, 624 S.E.2d at 34 (internal quotations omitted). "Relatively simple" allegations of emotional distress are sufficient to meet this requirement, but the distress must nonetheless still be severe. See Perk, 475 F.Supp.2d at 571 (citing Hatfill, 416 F.3d at 337).

Contained in the Amended Complaint is an allegation that the conduct of Wright and Bolling caused the Plaintiffs to suffer a variety of negative emotions, "physical sickness," "loss of sleep," and "loss of the enjoyment of life." (Am. Compl. at ¶ 291.) These allegations are not well detailed, but are similar to those asserted by the plaintiff in Perk, which the court found to be sufficient. See 475 F.Supp.2d at 571. Furthermore, they appear to be similar to the allegations upheld in Almy, where the plaintiff claimed that the emotional distress

10

had fundamentally undermined her ability to enjoy life. See 639 S.E.2d at 188. The question of plausibility is close, however, because the allegations are somewhat similar to those held to be insufficient in Harris. See 624 S.E.2d at 34. Nonetheless, the severity allegation passes muster. See Perk 475 F.Supp.2d at 571.

## CONCLUSION

For the foregoing reasons, DEFENDANTS DEBORAH BOLLING AND JACKIE WRIGHT'S MOTION TO DISMISS (Docket No. 70) Count 21 will be denied as to the claim for intentional infliction of emotional distress and granted as to the claim for negligent infliction of emotional distress in that count.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July 28, 2009

11