IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division



TERRY A. SANFORD, ET AL.,

    Plaintiff

v.                                       Civil Action No. 3:08cv835

COMMONWEALTH OF VIRGINIA, ET AL.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the Motion to Quash or Modify Plaintiffs' Suboenas *Duces Tecum* filed by defendants, Sammy Lancaster, Deborah Davis, Leigh Wacksman, Jowanna Dawn Brown, Patrick G. Maiberger, and MCV Associated Physicians ("MCVP") (collectively "defendants"). The subpoena is directed to: (1) the Custodian of Records, VCU Health System; (2) the Department of Risk Management of the VCU Health System; and (3) the VCU Police Department.

## BACKGROUND

The dispute in this case arises out of the death of John Charles Sanford ("decedent") while he was a patient at the Virginia Commonwealth University ("VCU") Health System's Medical College of Virginia ("MCV") Main Hospital on December 25, 2006. The decedent, who was severely ill, mentally and physically, was admitted to MCV for a kidney removal. During his stay at the hospital, he was

given certain medication that made him delirious and caused him to hallucinate. After having difficulty controlling the decedent, the hospital staff contacted the VCU Police Department and requested officer assistance to physically restrain him. He was allegedly handcuffed and left lying face down on the floor of his hospital room for thirty minutes. When the hospital staff returned to the room and turned him over they realized that he was not breathing. In an attempt to revive Sanford, a member or members of the medical staff intubated him. According to the medical examiner's report, the decedent also was given toxic levels of nortriptyline, a substance used for pain management and sedation.

When notified of Sanford's death, several relatives came to the hospital and were dissatisfied with the information given to them about the circumstances surrounding Sanford's death. Some of the relatives told several VCU personnel that there might be a legal action filed or that they were contemplating legal action. The threats of legal action were reported promptly to the Department of Risk Management for the VCU Hospital System. For that reason and because of the circumstances surrounding Sanford's death, an investigation into Sanford's death ensued.

Subsequently, an action was filed. As part of this litigation, plaintiffs served three Subpoenas Duces Tecum on the defendants on or about April 3, 2009 in an attempt to gain more information about the death of his brother.

The first subpoena was served on the Custodian of Records, VCU Health System, and requests:

> All medical records relating to the treatment of John Charles Sanford...but also includes requests for correspondence, emails, cables, facsimiles, memoranda... summaries of records or notes of personal conversations or interviews, diaries, calendars...minutes or records of meetings or conferences, reports...any documents related to the care provided to the plaintiff prepared by any employee, witness, or health care provider not contained in the medical records, opinions or reports of consultants, handwritten or any other notes.

(Def. Mem. at 1).

The second subpoena was served on the Department of Risk Management of the VCU Health System and requests "all records relating to John Charles Sanford" including:

> All documents, omitting nothing, relating to the treatment and death of John Charles Sanford including but not limited to all risk management documents, reports and/or summaries of investigation, incident reports, surveillance photographs or video tapes, post-treatment reports and statements; any documents related to the care provided to plaintiff prepared by any employee, witness or health care provider, but not contained in the medical records; any drafts, communications, correspondence, emails, cables, facsimiles , memoranda, records, books, summaries, graphs, charts, diagrams, tables, indexes, pictures, recordings, tapes, microfilm, analytical records, minutes, or records of meetings or conferences, opinion or reports of consultants, reports and/or summaries of negotiations, stenographic, handwritten or any other notes; computer printouts and computer disks and tapes and information stored on computers or other data or word processing

3

> equipment; and tape data sheets or data processing cards or disks or any other written, recorded, transcribed, punched, taped, filmed, or graphic matters, however produced or reproduced.

(Def. Mem. at 2). Finally, the subpoena to the VCU Police Department requests documents from December 20, 2006 to the present, pertaining to John Charles Sanford including "communication correspondence and emails." (Def. Mem. at 2).

After the three subpoenas were served, defendants filed a Motion to Quash or Modify Plaintiffs' Subpoenas *Duces Tecum*. In their motion, defendants argue generally that all the documents requested by plaintiffs are protected by work-product privilege under Fed. R. Civ. P. 26(b)(3)(A) because they were prepared in anticipation of litigation. Defendants base their assertion on the fact that John Charles Sanford died unexpectedly and in an unexpected manner, and upon the several threats of litigation by various family members of the decedent in the hours after his death.

In response, the Plaintiffs argue that specific documents listed in the privilege log are not work-product and therefore are not privileged. They also contend that defendants have failed to provide sufficient information to support the claims of privilege. Additionally, it is alleged that several documents contained in the privilege log are non-opinion work-product and that those documents

4

are discoverable because plaintiffs are able to make a showing of substantial need for them.

For the reasons set forth below, the defendants' Motion to Quash or Modify Plaintiffs' Subpoenas Duces Tecum will be granted in part and denied in part.

## DISCUSSION

### A. Work Product Doctrine

Rule 26(b)(3)(A) outlines the basic precepts of the work-product privilege.[1] The rule provides in pertinent part: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed.R.Civ.P.26(b)(3)(A). This rule codifies the holding in <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947), which established the principle that materials prepared in the "anticipation of litigation" are protected from discovery. <u>Id.</u> at 507. There are two types of work-product: one that is completely immune from discovery and one that is qualifiedly immune. <u>National Union Fire</u>

---

[1] Federal Rule of Evidence 501 provides that federal common law governs claims of privilege except to the extent that state law controls a claim or defense. Where, as here, there are both federal and state law claims and the allegedly protected documents pertain to both claims, the common law as applied in the federal courts controls.

Ins. Co. v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 984 (4th Cir. 1992). In order to determine whether or not a document is protected by work-product privilege, one must look at "whether the documents or tangible things were prepared in anticipation of litigation or for trial and then for materials other than legal opinion or theory...whether the requesting party has demonstrated a substantial need." Id. at 984. The party claiming the privilege has the burden to prove its existence and application. Sandberg v. Virginia Bankshares, Inc., 979 F.2d 332, 355 (4th Cir. 1992). A party claiming "substantial need" for access to non-opinion work-product has the burden to demonstrate substantial need. Fed.R.Civ.P.26(b)(3)(A)(ii).

It is settled in the Fourth Circuit that a document must have been prepared "because of" the potential for litigation in order to be protected by the work-product doctrine. Id. Materials that are prepared in the "ordinary course of business" or for other non-litigation purposes are not considered to have been prepared in the anticipation of litigation, even if litigation is anticipated. Id. Finally, if a document is prepared in anticipation of litigation but does not contain mental impressions that document may be discoverable upon a demonstration of substantial need and an inability to obtain the information in the document without undue burden. Id.

B.  Documents Requested

1.  **Privileged Documents: Documents <u>1, 3, 5, 6, 12, 16, 29, 36, 37, 39 and 49</u>**

Discovery of these documents is required because there appears to be no dispute that these documents are privileged and therefore non-discoverable.

2.  **Non-Work Product Documents: Documents <u>9, 10, 38, 41, 43, and 44</u>**

These documents do not qualify for protection under the work product doctrine. A "Transcription of Security Incident Telepages" with annotations, a "Dictaphone recorder log," a "security paper log," a fax from the Division of Urology containing medical records from a Defendant physician, and patient care records are documents that are created in the ordinary course of business. Because these are not documents that were created in the anticipation of litigation they are not protected by the work-product doctrine. They are therefore discoverable by the plaintiffs.

3.  **Documents with "Unknown" Authors: Documents <u>8, 28, 32, 33, 35</u>**

Having reviewed these documents *in camera* and having been given additional information as to the authors of the documents, the Court concludes that there is an insufficient showing that <u>Documents 28 and 32</u> are protected under the work product doctrine as they contain factual information, and not mental impressions, opinions, or thoughts. The defendants have not met their burden of

proof to demonstrate for what purpose the documents were created. Thus the defendants have not shown that these documents were created because of litigation or for some other purpose. Therefore, these documents are discoverable by the Plaintiffs. However, Documents 8, 33, and 35 are protected by the work product doctrine, subsequent to a demonstration of substantial need by the plaintiffs, as these documents were created in the anticipation of litigation.

   4.   **Documents Discoverable Upon a Showing of Substantial Need: Documents 14, 15, 17-27, 34, and 42**

Plaintiffs have met their burden of proof in demonstrating that they have a substantial need for Document 42, which contains a chronicle of events by Deborah Bolling and Jackie Wright. These are interviews which were prepared on the day of John Charles Sanford's death. When the plaintiffs had the opportunity to depose both witnesses approximately two years after the accident, it was revealed that neither witness had specific memory of certain events that took place on the day of decedent's death. Therefore, the Court holds that Document 42 is discoverable. However, the Plaintiffs have not demonstrated a substantial need for access to Documents 14, 15, 17-27, and 34. Thus, the motion to compel the production of those documents is denied without prejudice to any subsequent proof of substantial need.

## CONCLUSION

For the foregoing reasons, DEFENDANTS' MOTION TO QUASH OR MODIFY PLAINTIFFS' SUBPOENA *DUCES TECUM* (Docket No. 45) is granted in part and denied in part to the extent explained in the foregoing text and as provided in the accompanying Order.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July 31, 2009