

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TERRY RICHARD SANFORD,
as Administrator of the
Estate of John Charles Sanford,
deceased, officially, individually,
and as beneficiary, et al.,

    Plaintiffs,

v.                                Civil Action No. 3:08cv835

THE COMMONWEALTH OF VIRGINIA,
et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANTS SAMMY LANCASTER AND JOWANNA DAWN BROWN R.N.'S MOTION TO DISMISS (Docket No. 57). For the reasons set forth below, DEFENDANTS SAMMY LANCASTER AND JOWANNA DAWN BROWN R.N.'S MOTION TO DISMISS (Docket No. 57) will be granted in part and denied in part.

### BACKGROUND

The lead Plaintiff, Terry Sanford, is the administrator of the estate of his natural brother, John Sanford. (Am. Compl. at ¶ 2.) John Sanford, who was physically and mentally disabled, died while hospitalized in the Medical College of Virginia ("MCV") following surgery. (Id. at ¶ 1.) Approximately four days after major surgery, Sanford became delirious and difficult

to manage. (Id. at ¶ 43.) Hospital staff summoned assistance from the Virginia Commonwealth University ("VCU") police department which dispatched four officers who physically restrained Sanford. It is alleged that the officers placed Sanford in handcuffs, and left him prone on the floor for approximately half an hour. (Id. at ¶ 44.) After that time, Sanford died. (Id. at ¶ 46.) Sanford's death allegedly was caused by a combination of toxically-high doses of sedative, rough handling by police officers and hospital security guards in response to the disturbance caused by Sanford, and inattention by hospital staff after Sanford was restrained by police officers. (Id. at ¶¶ 49-50.) Hospital personnel also, allegedly, prevented Sanford's family from examining the body and lied about the circumstances surrounding his death. (Id. at ¶¶ 281, 287-88.)

The Plaintiffs have asserted a large number of claims against a significant number of defendants based on these events. Count 8 of the Amended Complaint alleges a statutory conspiracy claim against several VCU police officers, Security Guard Sammy Lancaster, and Nurse Juwanna Brown, pursuant to 42 U.S.C. § 1983. (Id. at ¶¶ 188-92.) The alleged object of this conspiracy was to deprive Sanford of his constitutional right to Equal Protection under the Fourteenth Amendment. (Id.) The

2

deprivation of those rights was consummated by Sanford's death. (Id. at ¶ 190.) The overt act of the conspiracy was the restraint of Sanford committed by the police officers and Lancaster. (Id. at ¶ 191.) The Amended Complaint also alleges that Brown either ordered or tacitly authorized the actions of Lancaster and the police officers. (Id. at ¶ 164.)

Count 22 alleges a common-law conspiracy claim against the same defendants, with the object to inflict pain and distress against Sanford. (Id. at ¶¶ 292-94.) The other factual bases for this conspiracy count are identical to those set forth respecting Count 8. (See id. at ¶ 292.)

Brown and Lancaster have now filed a motion to dismiss Counts 8 and 22, on the basis that they do not set forth a claim on which relief can be granted. (Def. Mem. at 1.) The Plaintiff has opposed to this motion. (Pl. Mem. at 1.)

## DISCUSSION

### A. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. The Court must take all factual allegations made in the complaint as true, and draw all reasonable and favorable inferences from those facts. Eastern Shore Markets, Inc v. JD Associates Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). In order to survive a Rule 12(b)(6)

motion, a pleading need not contain "'detailed factual allegations' but [Rule 8] demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id.

The Fourth Circuit, applying the Twombly standard, has emphasized that the complaint must "allege' enough facts to state a claim for relief that is *plausible* on its face.'" Giarratano, 521 F.3d at 302 (emphasis in original) (quoting Twombly, 127 S.Ct. at 1974). In deciding the motion, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id. (quoting Eastern Shore Markets, 213 F.3d at 180).

B. Count 8

1. Elements of the Claim

Count 8 of the Amended Complaint presents a claim of civil conspiracy under 42 U.S.C. § 1983 ("§ 1983"). A plaintiff seeking to establish such a conspiracy faces "a weighty burden." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996).

4

To establish a conspiracy under § 1983, a plaintiff must plead and prove that the defendants "'acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [defendants'] deprivation of a constitutional right.'" Veney v. Ojeda, 321 F.Supp.2d 733, 748 (E.D.Va. 2004) (quoting Hinkle, 81 F.3d at 421).

### 2. Acting in Concert

First, therefore, the Plaintiff must allege sufficient facts to demonstrate that Lancaster and Brown "acted in concert with each other or with others." Hinkle, 81 F.3d at 421. To satisfy this burden, the plaintiff "need[s] to plead facts that would reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." Ruttenberg v. Jones, 283 Fed.Appx. 121, 132 (4th Cir. 2008)(unreported)(applying Twombly standard to a § 1983 civil conspiracy claim). In Ruttenberg, the Fourth Circuit affirmed a district court's dismissal of a § 1983 civil conspiracy claim because the plaintiff made only a "bare, conclusory allegation that the defendants conspired to violate" the plaintiff's constitutional rights. Id.

The Amended Complaint alleges that Lancaster acted with the four VCU police officers to restrain Sanford. (Am. Compl. at ¶ 162.) The Amended Complaint thus sufficiently alleges that he

5

acted in concert with the four officers in restraining Sanford. See Harrison v. Prince William County Police Dept., 2009 WL 348068, *11-12 (E.D.Va. 2009) (complaint alleging that three police officers who acted together to assault and arrest the plaintiff sufficiently pled the acting-in-concert element).

The alleged connection between Brown and Lancaster and the police officers is a different matter. The Amended Complaint alleges that "Nurse Brown's conduct [] ordered, authorized, acquiesced in or permitted [the restraint of Sanford] or, in the alternative, failed to intervene to prevent or terminate it." (Am. Compl. at ¶ 181.) The Amended Complaint also alleges that Brown was the "person directly in charge of Mr. Sanford's care" at the time that the police officers and Lancaster became involved. (Id. at ¶ 162.) Finally, it is alleged that "the Doctors and/or nurses and/or hospital staff" summoned the police officers to the scene of the Sanford disturbance. (Id. at ¶ 43.)

Given a reading most beneficial to the Plaintiff, these allegations do not plausibly allege either an agreement or concerted action between Brown and Lancaster or between Brown and the VCU police officers. Brown is alleged to be a medical official, not a person in the chain of command for security officers or police. Thus, it is not plausible that she ordered, authorized or permitted the restraint of Sanford by Lawrence or

6

the police officers. And, even though acquiescence can create conspirator liability in some cases, the allegation is insufficient here because there is not an allegation that Brown, a medical official, had a duty, or the power, to prevent the actions of Lancaster or the VCU police officers. See Hafner v. Brown, 983 F.2d 570, 578 (4th Cir. 1992).

The allegation that Brown was in charge of Sanford's medical case at the time serves, not to implicate Brown in the conduct of the police officers or Lancaster, but to differentiate Brown's role and responsibilities at the time. The most that can be said about Brown's conduct, as to the conspiracy alleged in Count 8, is that she called the VCU police for help in dealing with an unruly patient. That does not plausibly make Brown a participant, by agreement or conduct, in the unlawful conduct in which the police officers and Lancaster allegedly engaged.

Thus, as to Brown, Count 8 is legally insufficient and will be dismissed.

### 3. Overt Acts

The second element required to establish a § 1983 conspiracy claim is the presence of an overt act done in furtherance of the conspiracy. See Hinkle, 81 F.3d at 421. An overt act is some action taken by a conspirator that is designed

to further the aims of the conspiracy. See id. The overt acts alleged by the Plaintiff are the restraint of Sanford by Lancaster and the police officers.[1] (Am. Compl. at ¶¶ 190-91.) Furthermore, the Plaintiff has pled that these acts were committed in order to further the object of the conspiracy, namely to treat Sanford differently than patients who were not disabled. (Id. at ¶ 155.) While the ability of the Plaintiff to obtain evidence of that allegation, and thereby survive a later motion for summary judgment, is questionable, he has pled adequate facts to make his claim plausible. Therefore, dismissal on this ground is inappropriate at this stage of the proceedings. See Iqbal, 129 S.Ct. at 1949.

### 4. Violation of a Constitutional Right

The final element of a § 1983 conspiracy claim is that a constitutional right of the Plaintiff's was violated as a result of the conspiracy. See Hinkle, 81 F.3d at 421. A § 1983 conspriacy claim that does not allege the violation of a federally-protected constitutional right should be dismissed under Rule 12(b)(6). See Shooting Point L.L.C. v. Cumming, 243 F.Supp.2d 536, 537-38 (E.D.Va. 2003) (dismissing § 1983

---

[1] The allegation respecting Brown's supposed overt acts will not be discussed because Count 8 fails against Brown for the reasons previously stated.

conspiracy claim in the absence of allegation of violation of a constitutional right).

The Amended Complaint is somewhat vague and unclear respecting of what constitutional right of Sanford was allegedly violated by Lawrence and the VCU police officers. (See Am. Compl. at ¶ 192.) The Amended Complaint variously refers to Sanford's "known right to be secure in his person and to be free from unreasonable searches and seizures," "Fourteenth Amendment right to life and liberty," and the conspirators' "intentional or purposeful discrimination against a disabled involuntarily committed [sic] person.[2]" (Id. at ¶¶ 61, 73, 155.) At this point, it is appropriate to take each of these alleged constitutional violations in turn.

The Amended Complaint alleges that the officers, Lancaster, and Brown violated Sanford's Fourteenth Amendment right to be free from the use of excessive force. (Am. Compl. at ¶¶ 92-100.) A claim of excessive force in violation of the Fourteenth Amendment can be brought through § 1983. See Orem v. Rephann, 523 F.3d 442, 445-46 (4th Cir. 2008). In order to succeed on such a claim, the plaintiff must demonstrate that the state

---

[2] The Plaintiff has mentioned several other supposed constitutional violations, as well, but these three are those that might be considered the results of the conspiracy alleged in Count 8.

9

actor "inflicted unnecessary and wanton pain and suffering." Id. at 446. Furthermore,

> In determining whether [this] constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm.

Id. The Plaintiff has pled facts that address each of these elements, and those factual allegations are plausible in light of the circumstances of Sanford's treatment: in light of his weakened state, the force used by the officers might well have been unnecessary; the injury inflicted (i.e., Sanford's death) was severe; and, it is plausible that the officers were acting for the purpose of causing harm, rather than in good faith. (See Am. Compl. at ¶¶ 92-101.)

Furthermore, state actors can violate an individuals substantive due process rights under the Fourteenth Amendment if the actors' behavior "shocks the conscience." Waybright v. Frederick County, MD, 528 F.3d 199, 205 (4th Cir. 2008). Generally, such claims may only proceed when the action taken was "intended to injure in some way unjustifiable by any government interest," although unintentional conduct can be constitutionally cognizable in "special circumstances." Id.

10

(internal quotations omitted). The Plaintiff has pled that the police officers and Lancaster forcefully restrained Sanford and that they and the hospital personnel thereafter ignored him despite his weakened condition. (Am Compl. at ¶¶ 44-46.) This conduct, allegedly, was a cause-in-fact of Sanford's death. (Id. at ¶ 59.) Furthermore, the Plaintiff alleges that the actions of the officers, Lancaster, and Brown were either grossly negligent or reckless, owing to their knowledge of Sanford's weakened condition, illness, and disabilities. (Id. at ¶ 77-78.) These allegations form a plausible basis for recovery for a violation of Sanford's Fourteenth Amendment substantive due process rights: the Defendants took affirmative harmful actions in the face of knowledge that Sanford was in a vulnerable state, and then ignored the possible effect of those actions upon him. See County of Sacramento v. Lewis, 523 U.S. 833, 850 (1998) (deliberately indifferent conduct as to medical needs of detained individuals can form the basis of a cognizable due process violation).

Finally, Sanford had a right to equal protection under the law, and violations of that right can also be compensated through § 1983. See Jennings v. University of North Carolina, 482 F.3d 686, 701 (4th Cir. 2007). To state an equal protection claim, a plaintiff must plead sufficient facts to "demonstrate

that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Williams v. Hansen, 326 F.3d 569, 576 (4th Cir. 2003).

The Plaintiff alleges that Sanford was treated differently than similarly-situated non-disabled individuals, and that the differential treatment was committed intentionally and as a result of Sanford's disabled status. (Am. Compl. at ¶¶ 127, 133.) Clearly, the conduct at issue was intentionally engaged in, but it is scarcely plausible that Lawrence and the VCU police officers decided to treat Sanford differently because he was disabled. Thus, it is at this juncture in this case that the "plausibility" standard bumps against its outer limits. However, the factual allegations are plausible in light of the conditions surrounding Sanford's treatment and the alleged knowledge of Sanford's condition.[3] For the foregoing reasons, Lancaster's motion dismiss Count 8 will be denied.

c. Count 22

Count 22 of the Amended Complaint alleges common law civil conspiracy against, inter alia, Brown and Lancaster. The elements of a civil conspiracy claim under Virginia law are:

---

[3] Whether discovery will bear out the charge that Sanford's treatment was because of disability is another matter. Counsel certainly will look carefully at the issue after discovery.

"(i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff." Firestone v. Wiley, 485 F.Supp.2d 694, 703 (E.D.Va. 2007) (quoting Glass v. Glass, 228 Va. 39, 47, 321 S.E.2d 69 (1984)). Virginia law also requires that damage was caused to the plaintiff by an act committed in pursuance of that conspiracy: "where 'there is no actionable claim for the underlying alleged wrong, there can be no action for civil conspiracy based on that wrong.'" Id. (quoting Citizens for Fauquier County v. SPR Corp., 37 Va. Cir. 44, 50 (1995)). Therefore, in order for the Plaintiff's civil conspiracy claim to survive, he must adequately plead not only the elements of civil conspiracy, but also the elements of the underlying tort committed by the conspirators that damaged him. See id. The Defendants do not dispute that the Plaintiff has adequately pled the presence of an unlawful purpose or harm to Sanford. (See Def. Mem. at 6.) Instead, they focus on the third necessary allegation: an agreement between the putative coconspirators. (See id.)

As with any element of a claim, the plaintiff must allege "more than mere conclusory language" when detailing the agreement among civil conspirators. See Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC, 261 F.Supp.2d 483, 499 (E.D.Va.

2003)(internal quotations omitted). The agreement in question must reflect a "preconceived plan and unity of design and purpose, for the common design is the essence of the conspiracy." Id. (internal quotations omitted). The plaintiff must further allege some details concerning the time and place at which the conspiracy came into being. See Firestone, 485 F.Supp.2d at 704.

For the same reasons that Count 8 is deficient as to Brown, Count 22 also fails as to Brown. Likewise, the previous analysis as to the conspiracy alleged in Count 8 applies to Count 22 as to Lancaster. Thus, Brown's motion to dismiss Count 22 will be granted and Lancaster's motion to dismiss it will be denied.

## CONCLUSION

For the foregoing reasons, DEFENDANTS SAMMY LANCASTER AND JOWANNA DAWN BROWN, R.N.'S MOTION TO DISMISS will be granted in part and denied in part.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
August 25, 2009