**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **TERRY R. SANFORD, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:08CV835** |
| | ) | |
| **COL. WILLIE B. FULLER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF BARUCH MAYER GROB, M.D.'S**
**AMENDED MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant Baruch Mayer Grob, M.D., by counsel, and for his

Memorandum in Support of the Amended Motion for Summary Judgment states as follows:

**STATEMENT OF THE CASE**

On May 1, 2009, the Court granted Plaintiffs leave to file their Amended Complaint. The

Amended Complaint, brought by Plaintiff Terry R. Sanford, Administrator of the Estate of John

Charles Sanford, (hereafter "Sanford"), seeks damages arising out of the death of John Sanford at

MCV Hospital on December 24, 2006.  Plaintiffs allege that Sanford was admitted to MCV on

December 20, 2006 for surgery to remove one of his kidneys.  Am. Compl. ¶ 24.  Plaintiffs also

allege that after the surgery, Sanford began experiencing periods of delirium.  Am. Compl. ¶ 29.

On December 23, 2006, Sanford became "violent and combative with staff."  Am. Compl., Exh.

F, p. 4.  The staff called for police assistance and officers restrained him.  Am. Compl. ¶43.

Shortly after the patient was restrained, he was noted to be unresponsive and not breathing.  Am.

Compl., ¶ 46.  Although health care providers attempted to resuscitate Sanford, their efforts were

unsuccessful. Am. Compl. ¶47.  Mr. Sanford was pronounced dead in the early morning hours of

December 24, 2006. Am. Compl., Exh. A.    Plaintiffs' Amended Complaint alleges a variety of violations, including constitutional claims raised against purported state actors under 42 U.S.C. § 1983 and common law counts asserting false imprisonment, intentional and negligent infliction of emotional distress, conspiracy, assault and battery, medical malpractice, and negligence – both simple and gross.

Claim Against Baruch Mayer Grob, M.D.

Plaintiffs assert a medical negligence claim against Baruch Mayer Grob, M.D. (hereinafter "Dr. Grob"). This cause of action is set forth in Count 23 of the Amended Complaint. Am. Compl. ¶¶ 295-304.  Plaintiffs allege that Dr. Grob  breached the standard of care in a variety of ways, including by prescribing nortriptyline in a manner that caused injury and/or death to John Sanford, by failing to consider his physical disabilities in the course of treatment, by failing to monitor and/or adjust his medications,  by failing to give due consideration for his nephrectomy, by failing to properly diagnose the cause of his delirium and/or administering additional medications and/or lethal combinations of medications and/or inadequately responding to his symptoms of notriptyline toxicity and/or failing to heed the pleas of his family who advocated on his behalf regarding his declining health condition, and for failing to supervise the residents who provided his post-operative care. Am. Compl. ¶¶ 298, 301.

The only expert proffered by Plaintiffs to provide standard of care testimony on the care rendered by Dr. Grob, a urologist, and the residents training in urology that he supervised, is Dr. Eileen Ryan, a psychiatrist.  Dr. Ryan is also expected to testify on how the alleged deviations by the urology team, caused Mr. Sanford's death.  Specifically, Dr. Ryan is expected to offer the opinion that that Dr. Grob breached the standard of care by neglecting to provide Dr. Meguid, a psychiatrist who was consulted concerning Sanford's care on December 22, 2006, with adequate

2

information regarding the symptomatology that prompted the psychiatric consultation, that Dr.

Grob breached the standard of care by failing to provide adequate information about Sanford's

mental status changes to the urologist who took over Sanford's care when he left for the day on

December 22, 2006, and that he breached the standard of care by failing to ensure the patient

received adequate medical care in his absence.  Dr. Ryan opines that, as a result of these "serious

medical errors," John Sanford died.

Dr. Grob's Summary Judgment Motion

Dr. Grob filed a Motion for Summary Judgment on August 21, 2009 on the basis that the

claim of medical malpractice required expert testimony from a qualified expert witness and that

Dr. Ryan, a psychiatrist, was unqualified to render standard of care opinion testimony on the

question of whether Dr. Grob, a urologist, had deviated from the standard of care for a urologist.

In his Memorandum in Support, Dr. Grob relied upon Virginia Code, § 8.01-581.20, to

demonstrate that Dr. Ryan was unqualified.  On September 2, 2009, this Court denied Dr. Grob's

motion, but granted him leave to file an amended motion on or before September 8, 2009.

**STATEMENT OF UNDISPUTED FACTS**

Pursuant to Local Civil Rule 56(B) of the United States District Court for the Eastern

District of Virginia, Dr. Grob sets forth the following material facts upon which there is no

genuine dispute:

1. Dr. Grob is an urologist and professor of urology at the Medical College of Virginia.
   Grob Decl. ¶¶ 1-5. Grob Dep. 15:1-16:1.

2. Eileen Ryan, D.O. is a psychiatrist and associate professor of psychiatry who limits her
   practice to psychiatry. Ryan Dep. 25:19- 26:14; 29:14-19.

3

3. Eileen Ryan, D.O. does not have any training in urology, does not care for urology surgical patients, has not been published in any peer-reviewed journals in the area of urology, does not regularly read urology journals and does not admit urology patients to the hospital. Ryan Dep. 10:9-13:4; 25:19-24; 34:8-10; 39:7-10; 47:22-48:7.

4. She has never treated patients whose problems are principally urological and has not consulted in urology. Ryan Dep. 16:5-18:2.

5. She is not credentialed at UVA Medical Center to admit urology patients or to do urology procedures.  Ryan Dep. 25:22-24; 47:22-48:7.

6. She has not done any research in urology.  Ryan Dep.  47:19-21.

7. Her exposure to urology, which is a subspecialty of surgery, consisted of a three month rotation through general surgery during her post-graduate internship.  Ryan Dep. 12:6-9.

8. Eileen Ryan, D.O. has never qualified as an expert in the area of urology and has never been retained to render opinions on the standard of care for urologists.  Ryan Dep. 51:1-3; 59:22-60:1.

9. Dr. Ryan anticipates testifying that Dr. Grob deviated from the standard of care for a urologist because he failed to provide sufficient information to transfer the care of the patient to Dr. Koo on December 22, 2006 and because he failed to provide sufficient information to Dr. Meguid, the consulting psychiatrist, on December 22, 2006.  Ryan Dep. 86:1-16; 219:25-221:6; 228:6-10.

## STANDARD FOR MOTION FOR SUMMARY JUDGMENT

The purpose of summary judgment is "to avoid a useless trial.  It is a device used to make possible the prompt disposition of controversies on their merits without a trial, if in essence, there is no real dispute as to the salient facts." *Johnson v. McKee Banking*, 398 F.Supp. 201, 204

4

(W.D.Va.1975), *aff'd* 532 F.2d 750 (4th Cir. 1976) (quoting *Bland v. Norfolk and Southern Railroad Company*, 406 F.2d 863, 866 (4th Cir. 1969)).

"Summary judgment is appropriate when the party seeking judgment has shown there is no dispute as to any material fact." *Long v. First Union Corp. of Virginia*¸ 894 F.Supp. 933, 939 (E.D. Va. 1995) citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986) and *Matsushita Electric Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).  On a motion for summary judgment

> [t]he test to be applied is whether the pleadings, depositions and admissions on file, together with the affidavits, show that …. there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Tunstall v. Brotherhood of Locomotive Firemen*, 69 F. Supp. 826 (E.D. Va. 1946), *aff'd* 163 F.2d 289 (4th Cir. 1947).  Once a party files a properly supported motion for summary judgment, the adverse party may not rely upon its pleadings, but rather, must set forth specific facts showing a genuine issue exists.  *Matsushita Electric Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Sherman v. City of Richmond*, 543 F.Supp. 447, 449 (E.D. Va.1982); *Long v. First Union Corp. of Virginia*, 894 F.Supp. 933 (E.D. Va. 1995), *aff'd*, 86 F.3d 1151 (4th Cir. 1996).

## Summary of the Argument

Plaintiffs cannot prevail upon their medical malpractice claim against Dr. Grob because they have failed to identify a witness who is qualified to render expert testimony that Dr. Grob deviated from the standard of care for a urologist.

As an initial matter, the Court must determine whether Virginia state law or federal law governs the qualification question.  Under Virginia law the substantive rule for medical malpractice claims is set out in Virginia Code, § 8.01-581.20.  That section requires that the standard of care to be applied be a standard established by the testimony of a properly qualified

expert and the same subsection establishes the qualifications for an appropriate expert witness. Because the question of whether a medical expert witness is qualified is "intimately bound up" with the Virginia substantive rules governing medical malpractice claims it is a substantive provision which federal courts sitting in diversity cases must apply. *Peck v. Tegtmeyer,* 834 F.Supp. 903, 909-10 (W.D. Va. 1992), *aff'd* 4 F.3d 985 (4th Cir. 1993) (unpublished decision at 1993 U.S. App. LEXIS 22951), *cert den'd* 510 U.S. 1074 (1994).

Section 8.01-581.20 requires that any expert establishing the standard of care have an "active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission." By this standard, Dr. Ryan is unqualified. First, she is not a urologist. Second, she has never had an active clinical practice in a "related field of medicine" as she has never been required to care for a post-surgical, post-nephrectomy patient.

Should the Court find that federal law governs the question of whether Dr. Ryan is qualified to testify the same answer results – she is not qualified to testify upon the standard of care for a urologist. Under Federal Rule of Evidence 702, expert testimony from a person qualified "by knowledge, skill, experience, training, or education" may be admitted. Here, Dr. Ryan has no knowledge, skill, experience, training or education in urology which would permit her to testify about the standard of care pertaining to a urologist caring for a post-surgical, post-nephrectomy patient.

## **ARGUMENT**

**SUMMARY JUDGMENT IS PROPER REGARDING THE MEDICAL MALPRACTICE CLAIM AGAINST DR. GROB BECAUSE THE PLAINTIFFS HAVE NOT PROFERRED THE TESTIMONY OF A PROPERTY QUALIFIED EXPERT WITNESS TO TESTIFY THAT DR. GROB DEVIATED FROM THE STANDARD OF CARE FOR A UROLOGIST.**

A.    **Plaintiff Must Produce Qualified Expert Testimony to Prevail on the Medical Malpractice Claim.**

In the Commonwealth of Virginia, expert testimony is ordinarily required to establish the appropriate standard of care, to establish a deviation from the standard, and to establish that such a deviation was the proximate cause of the damages. *Coston v. Bio-Medical Applications of Virginia*, 251 Va. 1 (2008); Raines *v. Lutz,* 231 Va. 110 (1986); *Bly v. Rhoads*, 216 Va. 645 (1976).  Most commonly, issues involving medical negligence fall beyond the realm of the common knowledge and experience of a lay jury, and therefore, expert testimony is almost always necessary. *Coston,* 251 Va. at 5.  Although there are certain circumstances where expert testimony is not necessary in a medical negligence case, these situations are rare and usually involve circumstances where the alleged negligent acts clearly lie within the range of the jury's common knowledge and experience. *Id.* at 6.  For example, such actions include cases involving foreign objects left in a patient's body during surgery, *see e.g. Easterling v. Walton* 208 Va. 214 (1967) (laparoscopy pad left inside patient's abdomen); *Dickerson v. Fatehi*, 253 Va. 324 (1997) (hypodermic needle left in patient's neck during a procedure), and cases where, though brought as a medical negligence action, the alleged negligence is not medical *per se* but of a more simple, general type. *Beverley Enterprises v. Nichols*, 247 Va. 264 (1994) (nursing home patient who needed assistance eating and had choked on two prior occasions left alone with a tray of food and choked); *Jefferson Hospital v. Van Lear*, 186 Va. 74 (1947) (patient fell on his way to the bathroom and injured his hip because staff ignored a call bell that had been activated for assistance); *Coston v. Bio-Medical Applications of Virginia*, 251 Va. 1 (2008) (patient injured when placed into a chair known to be defective).  However, as the Virginia Supreme Court has stated repeatedly when confronting this issue, the instances where expert testimony is not needed are *rare*. *See, e.g., Coston,* 251 Va.  at 5.

Here, while Plaintiffs assert broad claims of medical negligence in the Amended Complaint, the anticipated testimony of Dr. Ryan concerning the deviations from the standard of care by Dr. Grob are much narrower and two-fold.  First, she asserts that he failed to provide sufficient information to Dr. Meguid, a psychiatrist, to enable Dr. Meguid to perform an adequate consult of the patient on December 22.  Ryan Dep. 219:25-221:6.[1]  Second, she claims that Dr. Grob failed to provide adequate information to Dr. Koo – another urologist – when he took over the care of the patient on December 22.[2]  Ryan Dep. 228:6-10.  Neither these allegations of negligence nor any of the more broadly asserted claims in the Amended Complaint are the type for which expert testimony is unnecessary.  On the contrary, determining the information the standard of care requires a prudent urologist to have provided to a psychiatrist consulting on a post-surgical, post-nephrectomy patient being cared by the urologist is not the type of determination that a lay juror can make without qualified expert testimony.  Similarly, determining what information should have been provided to the succeeding urologist and how that information should have been transferred is not a determination that a lay juror can make without expert testimony.  The matters are simply not within the common knowledge and experience of the jury.

*Perdieu v. Blackstone Family Practice Center,* 264 Va. 408 (2002), illustrates this point. There, plaintiff alleged that the defendant physician failed to personally examine a patient; allowed the patient's care to be handled by a resident; failed to implement safety measures; failed to properly examine, diagnose, and treat the patient; and failed to supervise the residents. *Id.* at 412.  At trial, the court determined that plaintiff's experts were unqualified under Virginia

---

[1] Dr. Ryan is also critical of Dr. Meguid because he did not obtain the same information.  Ryan Dep. 221:1-6.
[2] Plaintiffs' counsel has, in conferences with the Court, asserted that Dr. Ryan will, in essence, assert that Dr. Grob "abandoned" the patient.  This hyperbole is not supported by the evidence.  The record indicates that Dr. Koo was caring for the patient after Dr. Grob's departure on December 22 and, in fact, saw the patient and made a notation in the patient's chart on December 23.

Code, § 8.01-581.20, and that the absence of such testimony was fatal to the medical negligence

claim. It, therefore, granted the defendants' motion to strike. *Id.* at 417. On appeal, plaintiff

argued that, consistent with *Beverley Enterprises,* 247 Va. 264 (1994), expert testimony was

unnecessary because the negligence was within the common knowledge and experience of the

jury. *Id.* at 420. The Virginia Supreme Court disagreed, noting that deviations alleged were of a

different nature than those claimed in the *Beverley Enterprises* case, and significantly, were of

the type "not within the common knowledge and experience of a jury." *Id.* at 421. Since the

Court also determined that under the relevant state statute, Virginia Code § 8.01-581.20,

plaintiff's proffered experts were not qualified to render expert testimony upon the standard of

care, it affirmed the trial court. *Id.* at 423.

     In this matter, as in *Perdieu*, the allegations are not of the type to permit a jury to find

that the attending urologist, Dr. Grob, committed negligence in the care of Mr. Sanford without

the assistance of expert testimony. On the contrary, expert testimony is necessary to establish

both what the standard of care for a prudent urologist requires, whether Dr. Grob deviated from it

and whether such deviation caused the death of the Mr. Sanford.

     **B.**    **<u>Virginia Code § 8.01-581.20 governs the requirements for the qualification of an expert witness upon the relevant standard of care because the qualification requirements are "intimately bound up" with the substantive requirements for the cause of action.</u>**

     Under the Erie Doctrine, federal courts deciding claims under state law must apply

federal procedural law and state substantive law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64

(1938). It is well established that, in a medical malpractice claim, what the standard of care

requires, whether the standard has been violated, and whether the violation proximately caused

an injury are substantive elements of the cause of action and are, therefore, governed by state

law. *Fitzgerald v Manning,* 679 F.2d 341, 346 (4th Cir. 1982), *see also Morgan v Schlanger*, 374

F.2d 235 (4th Cir. 1967).

While, in general, evidentiary issues are procedural matters determined by federal law,

the Fourth Circuit has recognized that in some situations "application of the federal rule of

evidence, although beyond argument procedural, may encroach upon a State's substantive law."

*Hottle v. Beech Aircraft Corp.* 47 F.3d 106, 110 (4th Cir. 1995).  In such cases, the state's rule

must be applied or the substantive policy of the state may not be implemented.  In short, there are

"circumstances in which a question of admissibility of evidence is so intertwined with a state's

substantive rule that the state rule . . . will be followed in order to give full effect to the state's

substantive policy."  *DiAntonio v. Northhampton-Accomack Memorial Hosp.,* 628 F.2d 287, 291

(4th Cir. 1980)(citations omitted).

Under the Virginia Medical Malpractice Act, Virginia Code, § 8.01-581.1 *et seq.* the

Virginia substantive rules for medical malpractice actions and the requirement for expert

witnesses to qualify to render testimony on the standard of care are inextricably intertwined such

that the qualification requirements set forth in Virginia Code § 8.01-581.20 must be applied by a

federal court upon a state claim of medical malpractice.  While the Fourth Circuit has not

explicitly held that the section must be applied (*but see Peck v. Tegtmeyer*, 1993 U.S. App.

LEXIS 22951 (4th Cir. Sep. 8, 1993)(affirming district court's application of § 8.01-581.20 to

disqualify expert witness) (copy attached as Exhibit A), it has recognized other procedural and

evidentiary characteristics of the Medical Malpractice Act that are so intertwined with the

substantive rules that they must be employed.  Further, district courts in both the Eastern and

Western District of Virginia have acknowledged that the Virginia statute applies to the

qualification of experts.

In *DiAntonio v. Northampton-Accomack Memorial Hosp*., 628 F.2d 287, 291 (4th Cir. 1980), the Fourth Circuit was confronted with the question of whether certain procedural requirements of the Virginia Medical Malpractice Act should be applied in medical malpractice claims in federal courts.  Specifically, in that case, the plaintiff appealed the dismissal of his diversity action for his failure to give the notice then required under the Act.  Further, he complained that the provisions allowing pre-litigation review by a medical malpractice review panel and permitting the panel decision to be admitted into evidence could not be enforced by federal courts as they were procedural.  The Fourth Circuit disagreed.

First the Fourth Circuit acknowledged that the Act, including its procedural elements, was intended by Virginia General Assembly to modify the state substantive cause of action for medical malpractice for certain salutary public policy benefits.

> There was a legislative finding that the high cost of medical malpractice insurance was beyond the means of some health care providers and that they were ceasing to render services.  It was thought that passage of the Act would lower the cost of medical malpractice insurance, since the panel would weed out frivolous claims and would perform a mediation function with respect to other claims.  In consequence of the panel's performance of these functions, it was believed that the amount of medical malpractice litigation would be substantially reduced, thus substantially lowering the cost of medical malpractice insurance.

*Id.* at 290.  Just as significantly, the procedural aspects of the Act at issue were, the Fourth Circuit determined, essential to effect the alteration and, therefore, "intimately bound up" with the substantive rules for the cause of action.  For example, with regard to the admissibility of the panel opinion the court noted:

> The provision of admission of the panel opinion is intimately related to Virginia's alteration of the substantive cause of action.  It is intimately related to Virginia's strong policy of encouraging and promoting pretrial mediation.  Because it enforces and implements those interests, the admission provision is applicable in this diversity case.

*Id.* at 291.

11

The same analysis applies with equal effect to the determination of whether this Court must apply the expert qualification requirements of Virginia Code, § 8.01-581.20.   To be sure, the statute itself integrates the substantive rule concerning the standard of care and the qualifications necessary for a witness to testify about it.   Thus, subsection A of 581.20 both defines the standard of care and sets out the requirements necessary for the qualification of a standard of care expert:

> In any proceeding before a medical malpractice review panel or in any action against a physician, clinical psychologist, podiatrist, dentist, nurse, hospital or other health care provider to recover damages alleged to have been caused by medical malpractice where the acts or omissions so complained of are alleged to have occurred in this Commonwealth, the standard of care by which the acts or omissions are to be judged shall be that degree of skill and diligence practiced by a reasonably prudent practitioner in the field of practice or specialty in this Commonwealth and the testimony of an expert witness, otherwise qualified, as to such standard of care, shall be admitted. . . . Any physician who is licensed to practice in Virginia shall be presumed to know the statewide standard of care in the specialty or field of medicine in which he is qualified and certified. This presumption shall also apply to any physician who is licensed in some other state of the United States and meets the educational and examination requirements for licensure in Virginia. . . . A witness shall be qualified to testify as an expert on the standard of care if he demonstrates expert knowledge of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards and if he has had active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action.

Va. Code § 8.01-581.20(A).

As Judge Jackson L. Kiser aptly noted in *Peck v. Tegtmeyer*, 834 F.Supp. 903 (W.D. Va. 1992), both the structure of the section and its language compel the conclusion that the expert qualifications are intimately bound up with the substantive provisions.

> [T]he qualification requirements of *Virginia Code § 8.01-581.20*, like the provisions of the Act at issue in *DiAntonio*, obtain in federal court. While the qualification requirements may be viewed as "procedural" rules, they are "intimately bound up" with a state substantive rule, the standard of care itself. The structure of the statute indicates that the standard of care and the qualification requirements for a standard of care expert are intertwined. First, the standard of care is "that degree of skill and diligence practiced by a reasonably prudent practitioner in the field of practice or

12

specialty in this Commonwealth." *Va. Code § 8.01-581.20(A)*. Second, as noted above, the standard of care must be established by expert testimony. Third, the same paragraph that defines the standard of care prescribes requirements for the qualification of an expert on the standard of care. In other words,  under the statutory scheme, the standard of care is that which is testified to by an expert qualified under the statute.

Although the Fourth Circuit has not held, in a published decision, that the expert qualifications provisions of Virginia Code, § 8.01-581.20 should be applied by federal courts, both its unpublished decisions and the decisions of other federal courts sitting in Virginia reach that result.  Thus, in an unpublished decision, the Fourth Circuit affirmed Judge Kiser's determination that the statute should be applied.  *Peck v. Tegtmeyer,* 1993 U.S. App. LEXIS 22951 (4th Cir. Sep. 8 1993).[3]  Similarly, in *Brown v. Brown,* 1995 U.S. App. LEXIS 4896 (4th Cir. Mar. 14, 1995) (copy attached as Exhibit B), the Fourth Circuit affirmed a district court decision which had entered summary judgment upon a finding that plaintiff's experts failed to qualify under Virginia Code § 8.01-581.20.  In that case, the court noted that "In Virginia, the admission of expert testimony in medical malpractice cases is governed by statute." *Id.* at *2.[4]

In addition to *Peck,* addressed, *supra,* other district courts sitting in Virginia have concluded that Virginia Code, § 8.02-581.20 applies to determine whether experts are qualified in medical malpractice claims subject to the Act.  Thus, in *Blevins v Sheshadri*, 313 F. Supp.2d 598 (W.D. Va. 2004), the court applied the Virginia statute to hold that an anesthesiologist would not likely qualify to testify as to the standard of care pertaining to a urologist.  *Id.* at 602.  Similarly, in *Harvey v. Roanoke City Sheriff's Office,* 585 F.Supp.2d 844 (W.D. Va. 2008), the court applied the Virginia statute to find that a clinical psychologist would not qualify to testify

---

[3] The case is reported in Table Case Format at 4 F.3d 985 (4th Cir. 1993) and certiorari was denied at 510 U.S. 1074 (1994).

[4] In *Daniel v. Pearce,* 2000 U.S. App. LEXIS 8484 (4th Cir. Apr. 28, 2000)(copy attached as Exhibit C) the Fourth Circuit affirmed a district court decision which had admitted expert testimony after finding the expert qualified under Virginia Code 8.01-581.20.  The court noted that the district court had applied the Virginia statute and that "either of two standards might apply to the question of expert qualification" but found it unnecessary to determine which should apply.  *Id.* fn.4.

upon the standard of care for nurses and medical doctors, *Id.* at 862-63, and in *Gaynor v. Ob/Gyn Specialists, Ltd.*, 51 F.Supp.2d 718 (W.D. Va. 1999), the court found a foreign expert qualified under the statutory standard.  *Id.* at 724.  Finally, in *Daniel v. Jones*, 39 F.Supp.2d 635 (E.D. Va. 1999), the court applied the Virginia statute to find a neonatologist qualified to render a standard of care opinion against an obstetrician.  *Id.* at 647-48.[5]

In short, Virginia Code, § 8.01-581.20, sets forth both the standard of care requirement and the qualification requirements for experts on medical malpractice claims.  These are inextricably intertwined with each other and impact the substantive rules of the state cause of action.  Accordingly, this Court should apply the statute to determine the qualifications of Plaintiffs' experts on the standard of care.

**C.      Dr. Ryan is not qualified to testify upon the standard of care for a urologist.**

1.      Dr. Ryan is not qualified under Virginia Code § 8.01-581.20 to testify upon the standard of care for a urologist.

Virginia Code § 8.01-581.20, states in pertinent part:

Any physician… who is licensed to practice in Virginia shall be presumed to know the statewide standard of care in the specialty or field of medicine in which he is qualified and certified. This presumption shall also apply to any physician who is licensed in some other state of the United States and meets the educational and examination requirements for licensure in Virginia. …A witness shall be qualified to testify as an expert on the standard of care if he demonstrates expert knowledge of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards and if he has had active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action.

Under the statute, a physician is presumed to know the statewide standard of care *in the physician's specialty or field of practice* if licensed in Virginia or if licensed in another state provided that he/she meets the educational and examination requirements for Virginia licensure.

---

[5] The case was affirmed by the Fourth Circuit in an unpublished decision that commented upon the qualification issue but did not find that the statute must be applied.  *Daniel v. Pearce,* 2000 U.S. App. LEXIS 8484 (4th Cir.).

*Jackson v. Qureshi*, 277 Va. 114 (2009); *Lloyd v. Kime*, 275 Va. 98 (2008).  However, even with the benefit of the presumption, to qualify as an expert witness on the standard of care, the witness must have expert knowledge in the standard of care in the defendant's specialty <u>and</u> an active clinical practice in either the defendant's specialty or a related field within one year of the date of the alleged act or omission forming the basis of the action.  These two requirements are referred to, by the Virginia Supreme Court, the "knowledge" and "active clinical practice" requirements. *Jackson* at 122; *Wright v, Kaye*, 267 Va. 510, 522 (2004).

In the Sanford case, there is no quarrel with whether or not Dr. Ryan is presumed to know the standard of care in the field of psychiatry.  She is a psychiatrist licensed to practice in Virginia.  However, Dr. Ryan does not meet the "knowledge" and "active clinical practice" requirements with regards to urology.  Importantly, the Virginia Supreme Court has held repeatedly that the provisions of the Code on these issues are mandatory; both of the requirements must be satisfied before an expert can testify as to the standard of care. *Perdieu* at 419; *Hinkley v Koehler*, 269 Va. 82, 88 (2005).  Dr. Ryan is disqualified because she has no expertise in the field of urology, or in any "related field."

In *Sami v Varn*, 260 Va. 280 (2000), the Virginia Supreme Court addressed the application of the phrase "related field of medicine."  There, the Court found that an obstetrician was qualified to testify about the standard of care pertaining to a pelvic examination performed by emergency room physicians.  In so doing, the Court underscored that the testimony established that both types of doctors performed precisely the same procedure (i.e. the pelvic exam) and that the standard applicable to performance was the same for each group.  *Id.* at 284. In short, *Sami* establishes that a provider is in a "related field" for the purposes of the statute, if

the provider performs precisely the same function or procedure as is alleged to be at issue in the matter at hand and is subject to the same standard.

By this standard, Dr. Ryan fails.  To be sure, Dr. Ryan proposes to establish her qualification by removing from the assessment all of the circumstances that demonstrate the unique nature of the practice of a particular medical specialty, like urology.  For example, she may claim that she cares for hospital patients, though she most assuredly does not care for **urology** hospital patients or even for **post-surgical** hospital patients .  She may claim she supervises residents, though she most assuredly does not supervise **urology** residents.  And she may claim that, from time to time, she is responsible for identifying important information to pass on to physicians covering for her or to physicians she has contacted for a consult, but she most assuredly does not do so in regard to **post-surgical, post-nephrectomy** patients.  It is specified similarity – i.e. the similarity of the precise medical care or procedure – not generic similarity that is commanded by *Sami* to satisfy the qualification requirement.

As both parts of the test must be met for an expert to qualify, a failure in any one of the two areas is sufficient to disqualify the proposed expert.  In this case, Dr. Ryan clearly fails to meet the "active clinical practice" requirement, since she neither practices urology (which is the defendant's area of specialty) or a related field of medicine.  According to the relevant case law, Plaintiffs, as the proponents of this expert must show that the specialty or field of medicine in which Dr. Ryan is qualified is the same as Dr. Grob's specialty, or is a related field of medicine. *Jackson* at 122; *Lloyd* at 109.  In other words, the Plaintiffs must demonstrate that in Dr. Ryan's specialty, psychiatry, she performs the same medical procedures as Dr. Grob does and that the standards of care pertaining to her in performing those as the same as those pertaining to Dr. Grob.  *Jackson* at 122, *Lloyd* at 110.  This she cannot do.

16

2.      Dr. Ryan fails to qualify under Federal Rule of Evidence 702 to provide expert opinion testimony concerning the standard of care pertaining to a urologist.

Should the Court find that Federal Rule of Evidence 702 governs whether Dr. Ryan is qualified to testify concerning the standard of care for a urologist, her testimony should still be excluded.  Under Rule 702, expert testimony is admissible if the proposed witness is qualified by "knowledge, skill, experience, training, or education" to render expert opinions that will assist the jury.  Fed. R. Evid. 702.  The use of the disjunctive indicates that a witness may be qualified as an expert on any one of the five listed grounds. *Id.*

The Fourth Circuit has applied the federal standard to scientific cases. *See, e.g. Friendship Heights Associates v. Koubek,* 785 F.2d 1154 (4th Cir. 1986) (applying Fed. R. Evid. 702 to determine whether an engineer qualified as an expert in a construction matter); *Kopf v Skyrm*, 993 F.2d 374 (4th Cir. 1993), (applying the federal rule to determine if a witness was qualified to testify about excessive force during a police arrest); *Cooper v. Laboratory Corporation*, 150 F.3d 376 (4th Cir. 1998), (applying Fed. R. of Evid. 702 to determine whether an expert was qualified to render opinions about laboratory urine testing).  Although the Fourth Circuit has also applied the Federal standard to witnesses testifying on the standard of care in medical negligence cases, this has uniformly been in cases arising from jurisdictions other than Virginia. *See, e.g. Pritchard v. Kurucz*, 22 Fed. Appx. 112 (4th Cir. 2001) (West Virginia).

Under Rule 702 as applied by the Fourth Circuit, "If a witness qualifies on any of the grounds listed in Rule 702, he should be allowed to testify as an expert."  *Friendship Heights Associates,* 785 F.2d at 1162.  The test is liberal, but not unbounded.  An expert who cannot demonstrate that she possesses "knowledge, skill, experience, training, or education" in the field at issue, is not qualified under the test. *Cooper v. Laboratory Corporation*, 150 F.3d 376, 380

(4th Cir. 1998).  Just as importantly, knowledge, skill, experience, training or education in a related field is not adequate.  *See, Cooper v. Laboratory Corporation,* 150 F.3d 380 (witness with knowledge in chemistry not qualified in forensic toxicology).

Under this standard, Dr. Ryan fails to qualify to render standard of care opinion in the field of urology.  While she is trained, educated and experienced as a psychiatrist, her deposition testimony confirms she has no knowledge, skill, experience, training or education in urology or even in surgery – the specialty in which urology is a subspecialty.  Quite simply, Plaintiffs attempt to qualify her not by demonstrating her experience in the subject area at issue (i.e. urology), but rather, by arguing that the standard of care for psychiatrists and urologists (and by extension – for all medical professionals) ought be the same irrespective of the fact that their knowledge, skill, experience, training and education is different.  What this argument fails to appreciate is that the substantive law requires that the standard be specific to the health care provider's specialty. *See* Virginia Code, 8.01-581.20.  While every health care provider might examine a patient, the standard of care for what a urologist is expected to do in such an examination and what he is expected to determine from such an examination is different than the things that a psychiatrist is expected to do and determine.  Dr. Ryan is qualified to testify as to the standard of care for psychiatrists, but she lacks the requisite knowledge, skill, experience, training or education to testify about the standard for urologists.

As the Fourth Circuit stated in *Westberry v. Gislaved Gummi AB,* 178 F.3d 257 (4th Cir. 1999), in assessing the admissibility of expert testimony

> the court must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to 'be both powerful and quite misleading.'  And given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded.

18

*Id.* at 261. (citations omitted).  Dr. Ryan's conclusions about what urologists are required to do in the Commonwealth of Virginia has no basis in any knowledge, skill, experience, training or education that she has concerning the practice of urology.  Accordingly, she is unqualified to provide such opinions, her testimony would be unreliable and more likely to mislead than to enlighten.  Accordingly it should be excluded and Dr. Grob's motion should be granted.

## CONCLUSION

Plaintiffs have failed to proffer a qualified expert under Virginia law to establish the standard of care and deviations from those standards.  Even under the liberal requirements of the Federal Rules of Evidence, Plaintiffs' expert, Dr. Ryan, a psychiatrist, does not qualify to render standard of care testimony concerning a urologist.  As a result, the Plaintiffs cannot establish a prima facie case of medical negligence against Dr. Grob pursuant to the requirements of Virginia Code § 8.01-581.20.  Therefore, the motion for summary judgment should be granted and Dr. Grob should be dismissed from the action.

**Respectfully submitted,**

**BARUCH MAYER GROB, M.D.**

_____/s/_____ _____
Charles M. Allen (VA Bar No. 30183)
Email:  callen@goodmanallen.com
Grace M. Brumagin (VA Bar No.  )
Email: gbrumagin@goodmanallen.com
GOODMAN, ALLEN & FILETTI, PLLC
4501 Highwoods Parkway
Suite 210
Glen Allen, Virginia 23060
Phone: (804) 346-0600
Fax:    (804) 346-5954

## CERTIFICATE OF SERVICE

I certify that on the 8th day of September 2009, I will electronically file the foregoing

with the Clerk of Court using the CM/ECF system which will then send a notification of such

filing to the following:

Richard Charles Ferris, II, Esq.
Steven J. McKinney, Esq.
Law Offices of Ferris and Ferris
Post Office Box 294
Chesterfield, Virginia 23832

*Counsel for Plaintiffs*

And

George W. Chabalewski, Esq.
Office of the Attorney General
900 E Main St
Richmond, VA 23219

John A. Gibney, Jr. Esq.
ThompsonMcMullin, P.C.
100 Shockoe Slip, 3d Floor
Richmond, Virginia  23219

*Counsel for the Col. Willie B. Fuller*
*Officer Bailey, Officer Ellsworth C. Pryor, Officer Brent J. Carter,*
*Officer Marvin J. Branch, Officer and Aaron K. Lavigne*

_____/s/_____ _____
Charles M. Allen (VA Bar No. 30183)
Email:  callen@goodmanallen.com
GOODMAN, ALLEN & FILETTI, PLLC
4501 Highwoods Parkway
Suite 210
Glen Allen, Virginia 23060
Phone: (804) 346-0600
Fax:    (804) 346-5954

*Counsel for Baruch Mayer Grob, M.D.*