**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**



TERRY R. SANFORD,
et al.,

     Plaintiffs,

v.

COMMONWEALTH OF VIRGINIA,
et al.,

     Defendants.

Civil Action No. 3:08cv835

### MEMORANDUM OPINION

This matter is before the Court on the Plaintiffs' MOTION
FOR ATTORNEY'S FEES AND COSTS (Docket No. 358). For the reasons
set forth below, the motion will be denied.

### BACKGROUND

The facts of this painfully protracted litigation are fully
recounted in previously issued opinions.[1] Suffice it to
summarize that John Sanford ("the decedent"), who was physically

---

[1]    Sanford v. Virginia, 2009 U.S. Dist. LEXIS 113279 (E.D. Va.
Dec. 2, 2009); Sanford v. Virginia, 2009 U.S. Dist. LEXIS 83979
(E.D. Va. Sept. 14, 2009); Sanford v. Virginia, 2009 U.S. Dist.
LEXIS 76041 (E.D. Va. Aug. 25, 2009); Sanford v. Virginia, 2009
U.S. Dist. LEXIS 66484 (E.D. Va. July 31, 2009); Sanford v.
Virginia, 2009 U.S. Dist. LEXIS 65202 (E.D. Va. July 28, 2009);
Sanford v. Virginia, 2009 U.S. Dist. LEXIS 65186 (E.D. Va. July
28, 2009); Sanford v. Virginia, 2009 U.S. Dist. LEXIS 52777 (E.D.
Va. June 22, 2009).

and mentally disabled, died after he was physically restrained following surgery at the Medical College of Virginia ("MCV"). His death led to this action, which features a wide range of claims against physicians employed by MCV Associated Physicians, medical personnel, and a security guard employed by MCV (collectively, the "MCV Defendants"), and against police officers employed by the Virginia Commonwealth University ("VCU") Police Department, and the former VCU Chief of Police (collectively, the "VCUPD Defendants"). All of these Defendants purportedly contributed to the decedent's demise. The Complaint, which was initially filed in December 2008, has been amended three times.

The Defendants, now sixteen in number, were originally represented by only two law firms, one representing the VCUPD Defendants,[2] and the other representing the MCV Defendants. Twice, once at the initial pretrial conference on March 25, 2009, and again six months later at a status conference on September 25, 2009, the Court expressed concern about potential conflicts of interest that could arise in the representation by each defense counsel of multiple clients, many of whom appeared to

---

[2]   To be precise, the Police Defendants were originally represented by counsel from the Virginia Attorney General's Office. As of August 28, 2010, the VCU Police Defendants obtained additional counsel after the original lawyer became ill.

2

have divergent and conflicting interests in defending the claims against them.

In the status conference held on September 25, 2009, counsel for the Plaintiffs represented that there would soon be filed a motion seeking disqualification of counsel for both defendant groups because discovery and the positions asserted in the Defendants' summary judgment briefs had disclosed the existence of several conflicts of interest. A briefing and hearing schedule was set, the Plaintiffs filed their disqualification motion, the issue was briefed and argued, and the Court granted the motion by Order entered December 2, 2009 (Docket No. 341), accompanied by a Memorandum Opinion (Sanford v. Virginia, 2009 U.S. Dist. LEXIS 113279 (E.D. Va. Dec. 2, 2009)), disqualifying both law firms from continued representation of their client groups. All Defendants now have new counsel, and both firms are now out of the case, save for their presence to defend against the present motion.

Asserting that the Defendants' prior attorneys refusal to withdraw from the case, despite the evident conflicts of interest, has multiplied litigation costs and will continue to do so, the Plaintiffs have moved for an award of attorneys' fees and costs pursuant to 28 U.S.C. § 1927, and also pursuant to the

Court's "inherent power" to award fees and costs. The motion is fully briefed,[3] and the issue is ripe for resolution.

## APPLICABLE LAW

The statute underlying the Plaintiffs' motion is 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Separate from that statutory authority, the Court also has "the inherent authority in appropriate cases to assess attorneys' fees and impose other sanctions against a litigant or a member of the bar who has 'acted in bad faith, vexatiously, wantonly, and for oppressive reasons.'" Williams v. Family Dollar Servs., 327 F. Supp. 2d 582, 585 (E.D. Va. 2004) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991)).

The burden of demonstrating entitlement to attorneys' fees, as well as the reasonableness of the specific fees requested, rests on the moving party. Morris v. Wachovia Securities, 448 F.3d 268, 284 (4th Cir. 2006). Furthermore, the Court is free to

---

[3] Several of the new attorneys for the Defendants have responded to the Plaintiffs' motion for attorneys' fees, apparently as a precautionary measure, asking that sanctions not be imposed against their clients. However, because the motion asks for an award of attorney's fees from only from the lawyers, and not from their clients, these filings from the Defendants' new counsel have no bearing upon the Plaintiffs' motion.

4

reject a motion for attorneys' fees when the moving party fails
to specify the amount requested, leaving the Court unable to
determine the specific fees and costs that are attributable to
opposing counsel's bad faith conduct, thus rendering the request
"deficient on its face." Id. at 283 (affirming a district
court's decision, based on a facially deficient fee request in
the Rule 11 context, to deny the sanction of attorneys' fees).

## DISCUSSION

To determine whether, and to what extent, the imposition of
attorneys' fees is warranted in this case, the Court must address
(1) the standard for awarding fees under § 1927; (2) the standard
for awarding fees under the Court's inherent power to self-
regulate; and (3) whether the defense attorneys' conduct in this
case warrants the imposition of fees under either standard.

### A. Section 1927

Section 1927 allows the Court to require an attorney who
"multiplies the proceedings . . . unreasonably and vexatiously"
personally to pay the fees incurred by the opposing party as a
result of the unreasonable and vexatious conduct. As the
Eleventh Circuit has phrased it, § 1927 requires the moving party
to make three showings:

> First, the attorney [against whom sanctions are sought]
> must engage in "unreasonable and vexatious" conduct.

> Second, that "unreasonable and vexatious" conduct must
> be conduct that "multiplies the proceedings." Finally,
> the dollar amount of the sanction must bear a financial
> nexus to the excess proceedings, i.e., the sanction may
> not exceed the "costs, expenses, and attorneys' fees
> reasonably incurred because of such conduct."

Peterson v. BMI Refractories, 124 F.3d 1386, 1396 (11th Cir.

1997); accord Amlong & Amlong, P.A. v. Denny's, Inc., 457 F.3d

1180, 1190 (11th Cir. 2006). The parties dispute what exactly

constitutes conduct that is both unreasonable and vexatious, as

well as what constitutes multiplication of the proceedings.

Additionally, the Defendants assert that the Plaintiffs have

neither stated the dollar amount they seek, nor shown a

"financial nexus" between any dollar amount of fees claimed and

the allegedly "unreasonable and vexatious" conduct.

**1. The Attorneys' Conduct Was Not Unreasonable and Vexatious**

### A. "Unreasonable and Vexatious" Conduct Does Not Require Bad Faith

The Defendants assert that "bad faith" is a precondition to

imposing sanctions under § 1927. They cite a long line of Fourth

Circuit decisions, and district court decisions from this

district, that clearly state this proposition. In response, the

Plaintiff offers but one unpublished decision from the Fourth

Circuit, as well as authority from other circuits to have

considered the issue. A review of the decisions on which the

Defendants rely discloses that the language in prior published

Fourth Circuit opinions, indicating a bad faith requirement, is not controlling, because in none of those decisions was a finding of bad faith necessary for the Fourth Circuit to reach its conclusion.

In _Brubaker v. City of Richmond_, 943 F.2d 1363 (4th Cir. 1991), which assessed the propriety of sanctions pursuant to Fed. R. Civ. P. 11, the Fourth Circuit first declared that "section 1927 . . . requires a finding of counsel's bad faith as a precondition to the imposition of fees." _Id._ at 1382 n.25. In the same footnote, the Court in _Brubaker_ explicitly stated that "we are not confronted with an award of sanctions based on a court's inherent power to govern and regulate the conduct of litigation before it or on 28 U.S.C. § 1927." _Id._ Thus, the bad faith comment in _Brubaker_ is dictum.

For the proposition that § 1927 sanctions must be predicated upon bad faith, the _Brubaker_ footnote cited _Blair v. Shenandoah Women's Ctr., Inc._, 757 F.2d 1435, 1438 (4th Cir. 1985). However, _Blair_ did not decide whether § 1927 sanctions required a finding of bad faith. _Blair_ reviewed a district court's imposition of sanctions pursuant to Rule 11 and the court's inherent power. Although § 1927 was asserted in the district court, it does not appear to have served as a basis for any of

the sanctions.[4]  In Blair, the Court of Appeals observed only that "we have no doubt that [the district court's evaluation of the attorney's conduct] tallies up to a correct finding of subjective bad faith."  Because there was no consideration of § 1927 as a basis for affirming the award of attorneys' fees, the "bad faith" finding in Blair does not stand for the rule that bad faith is necessary for a fee award under § 1927.

Thus, the Brubaker footnote was not only dictum, but also it was dictum that extrapolated from Blair something that Blair did not decide.  Subsequent decisions, however, have followed Brubaker's footnote 25 declaration as if it were a holding.

In Chaudhry v. Gallerizzo, 174 F.3d 394, 410 (4th Cir. 1999), the Fourth Circuit considered a district court's decision to award sanctions against an attorney under both Rule 11 and § 1927.  The district court had concluded "that 'the case was brought in bad faith and for the purposes of harassment of the Defendants."  Chaudhry, 174 F.3d at 410.  Echoing Brubaker, and without further analysis of § 1927, Chaudhry affirmed the district court's imposition of fees, based on conduct related to the *filing* of the suit (which is a ground for Rule 11 sanctions),

---

[4]    See Blair, 757 F.2d at 1436 ("The [district court's] findings refer[red] to . . . 'obvious bad faith' in filing the complaint, their 'dilatory tactics,' their 'frivolous' legal positions, and their 'scandalous' accusations.").  None of these bases for sanctioning the attorney's conduct related to the multiplication of the proceedings that § 1927 requires.

8

not the *multiplication* of proceedings (which is the basis for sanctions under § 1927).

In Royal Insurance v. Lynnhaven Marine Boatel, Inc., 216 F. Supp. 2d 562 (E.D. Va. 2002), the district court did conduct separate analyses of Rule 11, § 1927, and the court's inherent power, finding that the attorneys' conduct did not warrant sanctions under any of these opinions. As to § 1927, Royal Insurance adopted Brubaker's dictum requiring bad faith, and then observed "that there is no indication in Defendants' alleged facts of the bad faith conduct sought to be remedied by § 1927 sanctions." Id. at 566. However, the dispositive ground for refusing an award of fees under § 1927 appears to have been the finding that the "Plaintiffs did not 'multiply' the proceedings as conceived by § 1927." Id. at 567.

Other unpublished decisions in the Fourth Circuit have repeated Brubaker's dictum. Salvin v. Am. Nat'l Ins. Co., 281 Fed. App'x 222, 225 (4th Cir. 2008) ("We need not decide which standard [(subjective or objective bad faith)] applies in this case because the district court's factual findings support a determination that Hennessy acted in bad faith, even assuming that the more stringent subjective standard applies."); Thomas v. Shatz, 244 Fed. App'x 535, 539 (4th Cir. 2007) (noting not only the absence of evidence as to bad faith, but that "the evidence [was] uncontradicted that the lawyers were motivated by a desire

for general professional development rather than any purpose related to this particular case"); Sweetland v. Bank of Am. Corp., 241 Fed. App'x 92, 95 (4th Cir. Md. 2007) (quoting Brubaker without analysis of the bad faith standard). These unpublished opinions, while relevant, "are entitled only to the weight they generate by the persuasiveness of their reasoning." Hupman v. Cook, 640 F.2d 497, 501 (4th Cir. 1981).

Thus, the authority marshaled by the Defendants, while impressive in quantity, is not of a binding quality. It is indisputable that a goodly number of opinions have followed the dictum of Brubaker. However, repetition of Brubaker's language that "section 1927 . . . requires a finding of counsel's bad faith as a precondition to the imposition of fees" does not transmogrify this language from dictum into a binding precedent.

In opposition to the numerous decisions cited above, the Plaintiffs rely on Mitchell v. Sonies, 1995 U.S. App. LEXIS 13659 (4th Cir. June 5, 1995) an unpublished Fourth Circuit decision. The district court was faced with a bankruptcy attorney who filed four separate appeals in district court, then, after these appeals were consolidated on the opposing party's motion, the attorney failed to appear at the hearing. The district court sanctioned the attorney pursuant to § 1927, and the Fourth Circuit upheld the sanctions, stating that "it is enough that [the sanctioned party] acted 'recklessly or in bad faith.'" Id.

(citations omitted). As the Defendants note, Sonies is not binding and no subsequent decision has cited it.

The Plaintiffs also rely on authority from other jurisdictions, most prominently the Sixth Circuit's decision in Jones v. Continental Corp., 789 F.2d 1225 (6th Cir. 1986). Jones explicitly disavowed a "bad faith" predicate for imposition of attorneys' fees under § 1927, reasoning that, because a court may use its inherent self-regulatory power to impose attorneys' fees for bad faith conduct, § 1927 could not require bad faith, or it would add nothing to the court's inherent power. Jones, 789 F.2d at 1230. Jones thus held "that 28 U.S.C. § 1927 authorizes a court to assess fees against an attorney for 'unreasonable and vexatious' multiplication of litigation despite the absence of any conscious impropriety." Id. Jones has even been cited (albeit amidst a host of other decisions) approvingly in a Fourth Circuit decision, which noted Jones' adoption of a standard below that of bad faith. See Blue v. U.S. Dep't of Army, 914 F.2d 525, 544-45 (4th Cir. 1990) (approving the propriety of sanctions, even outside the Rule 11 context, when "an attorney knows or reasonably should know that a claim pursued is frivolous").

The Plaintiffs further note that the majority of circuits have not found bad faith to be a predicate for the imposition of sanctions pursuant to § 1927. See, e.g., Cruz v. Savage, 896 F.2d 626, 631-32 (1st Cir. 1990) (noting that, "while an

11

attorney's bad faith will always justify sanctions under section 1927," "subjective bad faith" is not required, and further finding that "[b]ehavior is 'vexatious' when it is harassing or annoying, regardless of whether it is intended to be so," although something "more severe than mere negligence, inadvertence, or incompetence" is required); FDIC v. Conner, 20 F.3d 1376, 1384 (5th Cir. 1994) (observing that "§ 1927 liability should 'flow only from an intentional departure from proper conduct, or, at a minimum, from a reckless disregard of the duty owed by counsel to the court.'") (citations omitted); In re TCI, Ltd., 769 F.2d 441, 445 (7th Cir. 1985) (noting that "'bad faith' has an objective meaning as well as a subjective one," and that "a lawyer engages in bad faith by acting recklessly or with indifference to the law"); Lee v. First Lenders Ins. Servs., 236 F.3d 443, 445 (8th Cir. 2001) ("Sanctions are proper under § 1927 'when attorney conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'") (citations omitted); Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987) (explicitly rejecting a "subjective bad faith" standard as "virtually impossible to apply," and further observing that "[t]o excuse objectively unreasonable conduct by an attorney would be to state that one who acts with 'an empty head and a pure heart' is not responsible for the consequences.") (citations omitted); Amlong & Amlong, P.A. v. Denny's, Inc., 457

12

F.3d 1180, 1190-91 (11th Cir. 2006) (rejecting a "subjective bad
faith" standard and finding that "objectively reckless conduct is
enough to warrant sanctions even if the attorney does not act
knowingly and malevolently").

The Plaintiffs contrast those circuit decisions with the
Second and Third, both of which require subjective bad faith as a
precondition for imposing § 1927 sanctions.     See Oliveri v.
Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986) ("[A]n award made
under § 1927 must be supported by a finding of bad faith similar
to that necessary to invoke the court's inherent power");[5] Baker
Indus., Inc. v. Cerberus, Ltd., 764 F.2d 204, 209 (3d Cir. 1985)
("[B]efore attorneys' fees and costs may be taxed under section
1927, there must be a finding of willful bad faith on the part of
the offending attorney").   The Plaintiffs list the Ninth Circuit
as among those courts that reject a subjective bad faith
standard; however, the Ninth Circuit's jurisprudence on this
issue is murky.  See, e.g., Pacific Harbor Capital, Inc. v.

---

[5]      However, confusingly enough, a later Second Circuit decision
found that bad faith was not necessary to imposing sanctions
under a court's *inherent power* when the attorney's conduct was
not performed in her role as an advocate, but rather consisted of
"disrupt[ing] and delay[ing] the proceedings and violat[ing] a
prior order of the Court."  United States v. Seltzer, 227 F.3d
36, 40-41 (2d Cir. 2000).   In Seltzer, the attorney was
sanctioned for keeping all of the other parties waiting for a
jury to announce its verdict.   Seltzer demonstrates both the
breadth of the Court's inherent power, and the case-specific
nature of a determination of sanctions.

Carnival Air Lines, Inc., 210 F.3d 1112, 1118 (9th Cir. Or. 2000) ("We assess an attorney's bad faith under a subjective standard. Knowing or reckless conduct meets this standard.") (quoting MGIC Indem. Corp. v. Moore, 952 F.2d 1120, 1121-22 (9th Cir. 1991)). Additionally, although the Plaintiffs do not mention it, the D.C. Circuit has not decided the issue. See LaPrade v. Kidder Peabody & Co., Inc., 146 F. 3d 899, 905 (D.C. Cir. 1998) ("This court has not yet established whether the standard for imposition of sanctions under 28 U.S.C. § 1927 should be 'recklessness' or the more stringent 'bad faith.'") (citations omitted).

Thus, surveying the field of authority from across the circuits, the Court contrasts the weight of persuasive authority from other circuits -- that subjective, malicious bad faith is not required for § 1927 sanctions -- with the Fourth Circuit's frequent recitation of a different conclusion (that bad faith is required), even though that conclusion has never been expressly adopted as a.holding in a published Fourth Circuit opinion.

However, for all the debate over what the proper standard should be, the previously cited decisions often neglect to define what is meant by the terms used to describe the applicable standards. Courts often state that the facts of the case show (or do not show) subjective bad faith, objective bad faith, recklessness, improper motive, or some other term describing an attorney's conduct. But, analyses of the differences among these

14

standards is sparse, and is particularly lacking in the Fourth

Circuit.

It is clear that, for conduct to be vexatious, more than

mere negligence is required.[6] "Vexatious" is defined in various

sources as "without reasonable or probable cause or excuse;

harassing; annoying;" (Black's Law Dictionary (8th ed. 2004)); as

"causing or likely to cause vexation: distressing, afflictive;"

(Webster's New Int'l Dictionary (Unabridged) 2548 (3d ed. 2002));

and as "in no way impl[ying] that the plaintiff's subjective bad

faith is a necessary prerequisite to a fee award against him,"

(Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (U.S.

1978) (discussing the "unreasonable, frivolous, meritless or

vexatious" standard for awarding a defendant attorneys' fees in a

Title VII action). It is also defined to explicitly require

intent (sometimes malicious intent) to harass or annoy.  See

Black's Law Dictionary (8th ed. 2004) (defining a "vexatious

proceeding" as one that is "instituted maliciously and without

---

[6]    The other word used in the statute to describe an attorney's
conduct, "unreasonabl[e]," by contrast, does not connote anything
more than mere negligence.  See, e.g., Amlong, 457 F.3d at 1190
("The term "unreasonably" necessarily connotes that the district
court must compare the attorney's conduct against the conduct of
a 'reasonable' attorney and make a judgment about whether the
conduct was acceptable according to some objective standard.").
Cf. Restatement (Second) of Torts § 281 (1965) ("The standard of
conduct to which [a person] must conform to avoid being negligent
is that of a reasonable man under like circumstances.").

15

good cause"); Webster's New Int'l Dictionary (Unabridged) 2548 (3d ed. 2002) (listing a secondary definition of "vexatious" as "lacking justification and intended to harass"); Family Dollar, 327 F. Supp. 2d at 585 ("'Vexatious' conduct, by definition, 'involves either subjective or objective bad faith.'" (quoting United States v. Camco Const. Co., Inc., 221 F. Supp. 2d 630, 634 (D. Md. 2002))).

Thus, the term "vexatious," as defined in legal dictionaries, lay dictionaries, and decisional law, admits of two meanings that, in some circumstances, are in tension with one another. One definition requires vexatious intent on behalf of the vexer. The other requires only that an objective vexee would perceive the vexer's conduct as vexatious.

For several reasons, the latter definition seems to be the appropriate one to apply in the context of § 1927. First, in Christiansburg, 434 U.S. at 421, the Supreme Court of the United States explicitly adopted a definition of "vexatious," in a comparable context, that did not require subjective intent by the party against whom sanctions are sought. Second, as the Sixth Circuit explained in Jones, 789 F.2d at 1230, if subjective bad faith is required for § 1927 sanctions, then § 1927 adds nothing to the Court's inherent powers but a legislative imprimatur, and the Court agrees with Jones that Congress intended the words of § 1927 to have effect. Third, adopting a definition of "vexatious"

that does not have a strict subjective bad faith predicate allows the court more flexibility in sanctioning conduct when proceedings are multiplied. When proceedings are multiplied due to an abdication of professional duty, even when that duty is not explicitly recognized and rejected by the offending party, sanctions are warranted. There must be a mechanism for holding accountable lawyers, as officers of the court, who act "with an empty head and a pure heart," Braley, 832 F.2d at 1512, to the detriment of the Court and the opposing party, by multiplying the proceedings in a manner that harasses opposing litigants and burdens the Court.

Often, as in many of the decisions discussed above, the difference among the various standards will be academic. But the difference matters when an attorney engages in "reckless" behavior that demonstrates a conscious disregard for a foreseeable risk that proceedings will be unreasonably and vexatiously multiplied. In such instances, such as that in Sonies, sanctions may well be warranted notwithstanding the absence of any other evidence of bad faith intent, or even of conduct that any reasonable, objective person would necessarily conclude was conducted in bad faith.

**B. Under Any Standard, the Attorneys' Conduct Was Not Unreasonable and Vexatious**

Using a "recklessness" standard as the point of departure, the Plaintiffs allege that Defense counsel "knowingly disregard[ed] the risk," or "inexcusably underestimate[d] or ignore[d] the risk," that its multiple-client representation would lead to disqualification. Thus, say the Plaintiffs, counsel "kn[ew] or reasonably should have known" that continuing to represent multiple defendants in the face of the patent conflicts of interest among them would lead to vexatious multiplication of the proceedings. Basically, the Plaintiffs contend that, if counsel had recognized their ethical duties and, in accordance therewith, had withdrawn from the multiple representation, the case would be ready for trial, instead of in its current posture: a case that, after extensive discovery, is not ready for trial and in which more discovery must be conducted to provide adequate defenses to some of disqualified counsels' clients. As the Plaintiffs phrase it, "counsel for the Defendants acted recklessly in disregarding their conflicts of interest and the dilatory and squanderous impact that such a continued unethical representation would have on the litigation process."

However, in this case, the Court cannot say that the Defendants displayed even a reckless disregard of their ethical

duties.     First,  the  notice  that  the  defense  attorneys  had  of
their  conflicts  was  not  as  clear  as  the  Plaintiffs  portray  it  to
be.     Original  counsel  for  the  VCUPD  defendants  avers  that  he  was
never  made  aware  of  the  Court's  admonition  at  the  March  25,  2009
initial  pretrial  conference,  and  the  attorney  from  the  Virginia
Attorney  General's  Office  who  attended  that  meeting  on  behalf  of
the  VCUPD  e  defendants  states  that  she  does  not  recall  that  the
conflict  discussion  involved  her  clients.     Furthermore,  the  MCV
Defendants'  counsel  alleged  that  he  thought  the  conflict  as
mentioned  on  March  25,  2009,  was  limited  to  a  single  issue
respecting  his  clients  which,  in  his  view,  was  subsequently
resolved.

Second,  although  the  conflicts  were  quite  real  and  were
present  from  the  outset  of  the  representation,  the  record  does
not  show  that  proceeding  with  the  joint  representation,  even  in
the  face  of  the  conflicts,  was  either  harassing  or  annoying  in
any  way.[7]  As  the  Plaintiffs  correctly  argue,  counsel  exercised
poor  judgment  in  accepting  and  continuing  the  representation  of
multiple   clients   because   their   interests   rather   clearly
conflicted  and  that  was  reasonably  knowable  from  the  outset  of
the  case.     And,  in  any  event,  it  certainly  became  obvious  as
discovery  disclosed  the  conflicts.

---

[7]     That  is  so  whether  the  matter  is  assessed  objectively  or
subjectively.

19

It might be said that counsel acted unreasonably in accepting, and continuing with, the multiple representation. For purposes of this analysis, the unreasonableness of counsel's conduct will be assumed. But, the exercise of poor judgment is not per se vexatious within the meaning of § 1927. Although the record shows that both counsel erred in accepting, and continuing with, the multiple representation, the most that can be said from this record is that they acted negligently in so doing, not that they acted recklessly or with wanton disregard for the consequences of their decisions.

Moreover, the record shows that, after counsel were alerted to the potential conflicts, they sought consents from their clients, as Rule 1.7 of the Virginia Rules of Professional Conduct allows them to do. That effort to proceed within the rules, albeit ineffective,[8] cuts against a finding that counsel acted vexatiously.

---

[8]    As observed in the disqualification opinion, Rule 1.7 requires that, for a lawyer to obtain his clients' consent to proceed with a multiple representation in the face of conflicts of interest, "the lawyer must reasonably believe that he will be able to provide competent representation to each affected client." Sanford v. Virginia, 2009 U.S. Dist. LEXIS 113279, at *38 (E.D. Va. Dec. 2, 2009). And, in this case, "neither of [the defense] counsel were in position to request a waiver because . . . neither reasonably could have believed that, under the circumstances of this case, they could represent all of the defendants whom they undertook to represent." Id. at *41.

20

Finally, an award of fees on this record would sanction an error of judgment, which would extend § 1927 beyond its stated limits of punishing the unreasonable and vexatious multiplication of proceedings. It also would have the effect of tilting the representational decisions of lawyers against representation of multiple clients and thus intrude into the regulation of the legal profession in a way not clearly envisioned by § 1927.

For the foregoing reasons, the Court finds that, although § 1927 does not necessarily require bad faith intent, the attorneys' conduct in this case was not vexatious.

## 2. The Attorneys' Conduct that is Alleged To Be Unreasonable And Vexatious Did Not Multiply the Proceedings

Even if the Defendants acted culpably under § 1927, the statute further requires that their conduct "multipl[y] the proceedings." In this case, although these proceedings will, when all is said and done, have been unnecessarily protracted, the consequent multiplication does not flow from the defense attorneys' conduct in undertaking and continuing the multiple representations.

As the Fourth Circuit observed in DeBauche v. Trani, 191 F.3d 499, 511 (4th Cir. 1999):

The unambiguous text of § 1927 aims only at attorneys who multiply proceedings. It "does not distinguish between winners and losers, or between plaintiffs and

21

defendants. The statute is indifferent to the equities of a dispute and to the values advanced by the substantive law." Rather, this provision "is concerned only with limiting the abuse of court processes." Thus, an attorney who files a meritorious claim and wins a substantial verdict may still be assessed sanctions under § 1927 if, during the case, he "multiplies the proceedings . . . unreasonably and vexatiously." Likewise, an attorney who files a meritless claim may not be sanctioned under § 1927 if he does not engage in such conduct. Section 1927 focuses on the conduct of the litigation and not on its merits.

Id. (citations omitted) (ellipsis in original).

Defendants' counsel assert that no multiplication of proceedings has occurred, or will occur, that is directly attributable to the conflict. As anyone familiar with this litigation can attest, some aspects of the work undertaken to date likely will have to be repeated. However, the vast majority of the repetition falls into three categories, none of which § 1927 sanctions would remedy. In the first category are actions that will need to be undertaken by new defense counsel -- such as reviewing the record and considering any possible new defenses -- that do not lead to direct costs for the Plaintiff. Secondly, it is likely that there will be additional motions to dismiss and renewed motions for summary judgment. Any new motions to dismiss will be directed only to new claims presented in the recently filed Third Amended Complaint. Thus, motions of that ilk, if made, will not be caused by the conflict or the disqualification. Any further summary judgment motions would be the consequence of

the fact that the original motions by the Defendants were dismissed without prejudice for failure to follow the rules applicable to presenting summary judgment motions. Indeed, the order denying the summary judgment motions observed that the motions also profusely described, as "undisputed," facts that were quite clearly in dispute, thereby violating Fed. R. Civ. P. 56 and its Local Rule equivalent, and raised qualified immunity defenses without regard for the considerable body of decisional law on the subject of qualified immunity or the analytical protocol required by circuit precedent for analysis of the qualified immunity defense.

Thirdly, new counsel for the Defendants have sought and received permission to tender additional expert witnesses, and that will require some additional depositions. If the Defendants had been represented separately from the outset, their separate counsel almost certainly would have offered experts of the sort now being tendered by new counsel. Thus, the representation decision by disqualified counsel did not multiply the proceedings because proper representation of the Defendants by separate counsel would have involved retaining (and deposing) the same kind of experts being presented by new counsel. In other words, the Plaintiffs would have had to deal with these experts if the disqualified counsel had not made the error of judgment in accepting and continuing with this multiple representation.

**B. Inherent Power**

As an alternative basis for the imposition of attorneys' fees, the Plaintiffs urge the Court to rely upon its inherent power to regulate its own proceedings. Because use of the inherent power generally requires a showing of conduct even more blameworthy than does § 1927, the Court concludes that the Defense attorneys' conduct does not warrant sanctions under its inherent power.

The decision in Royal Insurance defines the district court's inherent sanction power in considerable detail. 216 F. Supp. 2d at 567. The power, "incidental to all courts," allows district courts to sanction attorneys who inhibit courts' ability "to manage their own affairs." Id. The power allows a court to sanction an attorney's actions taken in bad faith, wantonly, oppressively, or vexatiously. Id. The power "ought to be exercised with great caution," in circumstances such as those involving "the very temple of justice [being] defiled." Id. (citations omitted).

The Court's inherent power to impose sanctions is in some respects broader, and in other respects narrower, than its authority to impose sanctions pursuant to § 1927. It is broader, in that it covers every type of litigation misconduct, unlike rule-based and statutory authorities such as Rule 11, Rule 37,

and § 1927, which concern themselves with specific types of misconduct. But, the Court's inherent power is narrower in that the misconduct required is almost always something more egregious than that required for other types of sanctions.[9]

Notably, at oral argument, the Plaintiffs were clear that they did not allege that the disqualified counsel had acted in bad faith, if bad faith is defined as "dishonesty of belief or purpose." Black's Law Dictionary (8th ed. 2004). However, the Plaintiffs did not abandon their argument for sanctions under the inherent power of the Court. They alleged that, because disqualified counsel displayed "callous disregard for the authority of the district court," Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., 872 F.2d 88, 92 (4th Cir. 1989), the Court has the inherent power to sanction their conduct.

The decision from which the Plaintiffs pluck the preceding quote demonstrates why the defense attorneys' conduct falls far short of that which is sanctionable under the inherent power to

---

[9]     Seltzer, the Second Circuit decision discussed supra, footnote 5, is something of an outlier, in that it did not require bad faith conduct for a district court to impose a $350 fine on an attorney for making the court and all other parties wait 25 minutes for a jury verdict to be announced while the attorney returned from lunch. Although it could be viewed as approving a lower standard for use of the Court's inherent power, Seltzer is better viewed as encapsulating the case-specific nature of courts' exercise of their inherent power to self-regulate.

regulate.    In Richards, the district court had entered default judgment against the defendants for flagrant discovery abuses in violation of Fed. R. Civ. P. 37.    The defendants conducted "13 months of subterfuge and direct defiance" of the Court's orders to respond to discovery requests.    Richards, 872 F.2d at 94.    The plaintiffs had filed five motions to compel, all of which the court granted, and with none of which the defendants complied. Id. at 89-91.    By contrast, the conduct at issue here, while not advisable, was certainly not in the same league as the egregious flouting of court orders sanctioned in Richards.

Importantly, this case, unlike Richards, did not involve violating a Court order.    Nor does the rather serious error of judgment by disqualified counsel otherwise make it appropriate to use the Court's inherent powers to award fees to the Plaintiffs or otherwise sanction disqualified counsel.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' MOTION FOR ATTORNEY'S FEES AND COSTS (Docket No. 358) will be denied.[10]

It is so ORDERED.

_____ /s/         _REP_
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  February 23, 2010

---

[10]  Given the foregoing decisions, it is not necessary to consider the argument that the Plaintiffs' proof of fees is legally insufficient.   For the same reason, the Plaintiffs' motion to supplement the fee request, made orally at the hearing on the motions, will be denied as moot.